# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| **WHITNEY SPAULDING,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 3:22-cv-00292** |
| | § | |
| **MATTHEW WEST,** | § | **JURY** |
| **SERGEANT KYLE GARCIA,** | § | |
| **OFFICER CHRISTOPHER** | § | |
| **ETHRIDGE, OFFICER CRAIG** | § | |
| **CRAWLEY,** | § | |
| **CITY OF CLUTE, JANE DOE,** | § | |
| **JOHN DOE 1, and JOHN DOE 2** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JEFFREY V. BROWN, U.S. DISTRICT JUDGE:

COMES NOW, Plaintiff **WHITNEY SPAULDING,** by and through her attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this *Plaintiff's First Amended Complaint and Jury Demand* complaining of Defendants, former Clute Police Officer **MATTHEW WEST,** Clute Police Sergeant **KYLE GARCIA,** Clute Police Officer **CHRISTOPHER ETHRIDGE,** Clute Police Officer **CRAIG CRAWLEY,** Richwood Police Officer **JANE DOE,** Brazoria County Deputy **JOHN DOE 1,** Brazoria County Deputy **JOHN DOE 2**, and the **CITY OF CLUTE**, more particularly the **CITY OF CLUTE POLICE DEPARTMENT** ("CPD"), and for cause would show the Honorable Court as follows:

# I.
# **INTRODUCTION**

1.     On or about March 16, 2022, in response to Ms. Spaulding refusing consent to City of Clute police officers, Brazoria County deputies, and Richwood police officers, to access and search her home—and verbally opposing the illegal conduct—former Clute Police Officer Matthew West physically removed her from her doorway, threw her into a window, handcuffed her, and then purposefully kicked her knee so hard that it ruptured her ACL.   With Spaulding out of the way, accompanying police officers failed to intervene and made unlawful entry and search of Plaintiff's residence without a warrant, consent, or exigent circumstances. Plaintiff remained in handcuffs for about an hour before she was finally released. Whitney M. Spaulding brings this civil action for damages against the City of Clute and its police officers, as well as other unidentified individuals for violating Plaintiff's rights under the First and Fourth Amendments of the United States Constitution and pursuant to 42 U.S.C. § 1983.

2.     Plaintiff alleges that the City of Clute and its policymakers, City Manager CJ Snipes ("Snipes"), Chief of Police James Fitch ("Fitch"), the Clute City Council, and Mayor of Clute Calvin Shiflet ("Shiflet") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known to engage in the use of excessive force, including those officers repeatedly

accused of such acts.  The Policymakers, specifically City Manager Snipes, along with Chief of Police Fitch, had a duty, but failed to implement and/or enforce policies, practices, and procedures for the CPD that respected Plaintiff's constitutional rights.  These failures resulted in Plaintiff sustaining a ruptured ACL, bruised arms, and psychological injuries for which she is still receiving treatment today.  These incidents clearly violated Plaintiff's rights afforded to her under the United States Constitution and Section 1983.  Plaintiff was harmed and seeks recovery in this lawsuit.

## II.
## <u>JURISDICTION AND VENUE</u>

3.     This is a civil rights action in which the Plaintiff seeks relief for the violations of her rights secured by 42 U.S.C. § 1983 and the Fourth Amendment.

4.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

5.     Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

6.     The events that gave rise to this lawsuit took place at The Life of Forest View Apartments located in Clute, Brazoria County, Texas.

## III.
## <u>PARTIES</u>

7.     Plaintiff **WHITNEY M. SPAULDING** ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of Clute, County of Brazoria,

State of Texas.

8.      Defendant **CITY OF CLUTE** ("Defendant City") is a political subdivision of the State of Texas, acting under the color of state law, and is a person for the purposes of a 42 U.S.C. § 1983 action.  Defendant is responsible for the policies, practices, and procedures of its Police Department and individual officers.

9.      Defendant **MATTHEW WEST** ("Defendant West") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.  Defendant West was permitted to resign in lieu of termination which allowed him to retain his peace officer license and avoid any discipline or criminal charges.

10.     Defendant **KYLE GARCIA** ("Defendant Garcia") was at all pertinent times a police Sergeant employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer and supervisor.

11.     Defendant **CHRISTOPHER ETHRIDGE** ("Defendant Ethridge") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

12.     Defendant **CRAIG CRAWLEY** ("Defendant Crawley") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

13.     Defendant **JANE DOE** ("Defendant Officer Doe") was at all pertinent times a police officer employed by the City of Richwood and was at all pertinent times acting under color of state law in performance of her duties as a Richwood police officer.

14.     Defendant **JOHN DOE 1** ("Defendant Deputy Doe 1") was at all pertinent times the deputy employed by Brazoria County and was at all pertinent times acting under color of state law in performance of his duties as a Brazoria County Sheriff's Deputy.

15.     Defendant **JOHN DOE 2** ("Defendant Deputy Doe 2") was at all pertinent times the deputy employed by Brazoria County and was at all pertinent times acting under color of state law in performance of his duties as a Brazoria County Sheriff's Deputy.

16.     Each and all the acts of Defendant Officers alleged herein were committed by said Officers while acting within the scope of their employment, each with their respective law enforcement office: the Clute Police Department, the Richwood Police Department, and/or the Brazoria County Sheriff's Office.

17.    Each and all of the acts of Defendant Officers were committed by these Officers despite their knowledge that they were engaging in unlawful and unconstitutional acts.    Yet despite this knowledge, they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## IV.
## STATEMENT OF FACTS

18.    This action involves an incident that occurred starting late in the evening of March 15, 2022, and ending early the morning of March 16, 2022, at or around about 5:00 A.M., which is addressed herein chronologically.

19.     On the evening of March 15, 2022 (and into the early morning of March 16, 2022), Clute police officers, together with Richwood police officers and Brazoria County Sheriff deputies, responded to a call of service at the apartment complex where Plaintiff resided.  During this call of service, Clute police officers arrested two individuals for minor offenses.

20.    Plaintiff was never suspected of committing any crime.

21.    While on scene, Defendants West, Garcia, Ethridge, and Crawley—all with the Clute Police Department—observed Plaintiff standing in her open doorway across the apartment green before approaching her.



22.     Defendant West moved to pass Plaintiff and stepped into her apartment. Alarmed, Plaintiff told Defendant West that it was her apartment, and he did not have consent to enter. Suddenly and without explanation, Defendant West forcefully grabbed Plaintiff and dragged her toward the front window of her neighbor's apartment.

23.     While Defendant West bodily dragged Plaintiff, another Defendant Officer reached into Plaintiff's pants pocket and removed her pocketknife either keeping it or giving it to Defendant West. That knife was never returned.

24.     Defendant West shoved Plaintiff into her neighbor's window and placed her in handcuffs. Defendant West did not tell Plaintiff she was being detained or arrested. She was not asked to make any statement, and she was not considered a witness or subject to any investigation. She  simply voiced her objection to officers making a warrantless entry into her home.

25.     Each individual defendant witnessed this assault but did not intervene or stop Defendant West's application of excessive force. Instead, they ratified the conduct by assisting in the arrest, either through observation or searching Plaintiff.

26.     Plaintiff asked Defendant West if he was wearing his body camera. Defendant Officer West told Plaintiff his body camera was in his truck.

27.     Without warning, Defendant West told Plaintiff to, "Get the fuck down," and purposefully kicked her in the knee so hard that it ruptured her anterior cruciate ligament.  Plaintiff fell to the ground, landing hard on her knees causing further injury.

28.     Her right knee was visible to the officers, and they could clearly see that it immediately began to swell and bruise, but no one tended to her injuries.

29.     With Plaintiff not free to leave, under the control of Defendant West, forcibly removed from her entry way, in handcuffs, and with a ruptured ACL, Defendants Garcia (the ranking officer on scene), Ethridge, and Crawley entered Plaintiff's apartment without her consent, a warrant, or exigent circumstances.  They began to illegally search her apartment, even searching through her closets and opening the bathroom door on her friend who was using the restroom.

30.     Other law enforcement agencies were on scene, including two Brazoria County Sheriffs, Defendant Deputies John Doe 1 and John Doe 2, and a female officer from the Richwood Police Department, Defendant Officer Jane Doe.  These officers stood around watching what was happening inside.



31.     Upon information and belief, these individuals knew that the Clute PD officers were making an unlawful entry and search but failed to intervene to stop the ongoing constitutional violations.  These officers observed Defendant West's assault on Plaintiff, and observed Plaintiff in pain with her swollen knee but refused to provide any medical attention.

32.     Meanwhile, Defendant Sergeant Kyle Garcia and Defendant Officer Christopher Ethridge and/or Officer Craig Crawley took two individuals inside Plaintiff's home to question them.



33.     After about an hour—once Defendants completed their unlawful intrusion into Plaintiff's apartment—Defendant Officers removed Plaintiff's handcuffs.  When Plaintiff tried to stand, she could not.  A Defendant Officer helped Plaintiff stand.  Plaintiff tried to take several painful steps, but her knee gave out on her, and she collapsed on the ground.

34.     Defendant Officers stood around laughing and joking that Plaintiff was drunk.  Plaintiff informed them she could not walk due to Defendant West kicking her knee.

35.     Despite the assault occurring about an hour earlier, Defendant Officers finally called EMS.  When the ambulance arrived, Plaintiff saw a Defendant Officer whispering to the EMT.  This concerned Plaintiff, as she did not trust the Defendant Officers in light of the events that just occurred.

36.     When the EMT approached Plaintiff, Plaintiff told her she could not walk and asked for crutches.  The EMT denied having crutches.  They only had a stretcher.  Plaintiff tried to clarify that she could not walk.  In response, the EMT told her she (meaning Plaintiff) would not come with that attitude.  Plaintiff, who no longer felt it was safe to go with the EMT, told her she would not be going with her.

37.     Eventually the EMT and Defendant Officers left.  Before the Defendant Officers left, they took a picture of Plaintiff's knee.

38.     Several hours passed.  Plaintiff still could not walk comfortably, and her leg hurt so much she was unable to sleep.  Since she could not drive, Plaintiff called a friend to take her to the nearest hospital, UTMB Health's Angleton campus.

39.     Plaintiff was diagnosed with a ruptured ACL.  She had surgery to repair the rupture on or about September 20, 2022.

40.     On March 17, 2022, Plaintiff went to Defendant City's police department wearing an immobilizer on her knee to submit a complaint.  Not a single officer was disciplined for their conduct.

41.     At the time of the incident, Plaintiff, a factory worker, was temporarily laid off.  She was recently offered her job back but had to decline because she was unable to meet the physical demands of her job.

42.     The psychological injuries of this incident were great.  With the initial assault by West, the failure of the other officers to act, the failure of the City to investigate and discipline, together with Plaintiff unable to work due to her injury, and the need for surgery (which may never result in a full recovery) caused Plaintiff to fall into a deep depression.

43.     Plaintiff attempted suicide by swallowing a handful of pills and was admitted for inpatient treatment.  She was ultimately diagnosed with major depressive order with the March 16, 2022, incident being the triggering event.

44.     On September 20, 2022, Plaintiff had surgery to repair the ACL rupture caused by Defendant West.  It is still too early to evaluate whether the surgery was successful, whether additional surgery is needed, and what the full treatment plan will entail.  She is in the middle of a treatment plan that will span for at least a few months.  This information will be fully developed in discovery.

45.     Plaintiff has a long road to recovery ahead of her.  She filed this lawsuit to seek answers, justice, and monetary relief.

## V.
## CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment – Retaliation)

46.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

47.     Plaintiff asserts this claim against Defendant West.

48.     It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech.  *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, (1974) (Powell, J., concurring)) ("Trained officers must exercise restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of

protected speech activities."); *see City of Hous. v. Hill*, 482 U.S. 451, 462 (1987)

("[The] First Amendment protects a significant amount of verbal criticism and

challenge directed at police officers."). Defendant West violated this right.

49.    At all times relevant, Defendants West was acting under color of State

law.

50.    Defendant West forced himself past Plaintiff to make entry into her

home until Plaintiff verbally challenged him. Plaintiff used speech to inform Officer

West that he was engaged in illegal activity. Plaintiff also pointed out to Defendant

West that he did not have his body worn camera on him. Plaintiff's verbal criticism

was met with force. *Hill*, 482 U.S. at 462-63 ("[T]he First Amendment protects a

significant amount of verbal criticism and challenge directed at police officers.").

51.    Because of this protected speech, Officer West—while other defendant

officers watched—threw Plaintiff into her neighbor's window, handcuffed her, and

kicked her in the kneecap causing her to fall to the ground and rupture her ACL.

This force was motivated by Plaintiff's speech and it would chill a person of ordinary

firmness from engaging in similar protected speech. *See, e.g.*, *Brooks v. City of West

Point*, 639 F. App'x 986, 987 (5th Cir. 2016) ("[A]rrest for cursing a police officer

was an injury that would chill the speech of a person of ordinary firmness.").

52.    Officer West did not have any non-retaliatory reason to throw Plaintiff

into her neighbor's window, to arrest her, or kick her kneecap but for Plaintiff

exercising her right to free speech.  Plaintiff was not a safety threat or committing any crime.   She simply verbally opposed Defendant Officers attempting to unlawfully enter her home.

53.     Defendant West, intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence, retaliated against Plaintiff for engaging in protected conduct.

54.     As a direct and proximate result of Defendant West's unlawful actions, Plaintiff was harmed.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourth Amendment – Illegal Entry)**

55.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

56.     Plaintiff asserts this claim against Defendants West, Garcia, Ethridge, and Crawley.

57.     It is clearly established that warrantless entry into a home is unconstitutional. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) ("[T]he Fourth Amendment's protection of curtilage has long been black letter law.").  The Fifth Circuit has held that, "[u]nder the Fourth Amendment, a warrantless intrusion into a person's home is 'presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the intrusion." *Rockwell v. Brown*,

664 F.3d 985, 994-96 (5th Cir. 2011) (analyzing a warrantless entry claim separately from a warrantless arrest claim).  Defendants violated this right.

58.     At all times relevant, Defendants West, Garcia, Ethridge, and Crawley were acting under color of State law.

59.     Defendant West forced himself past Plaintiff to make entry into her home until Plaintiff verbally challenged him.   West did not have exigent circumstances or probable cause, a warrant, or consent to enter.  He stepped foot in Plaintiff's home anyway.  Once Plaintiff explicitly told West that he did not have consent to enter, he forcibly removed Plaintiff from the doorway so Defendants Garcia, Ethridge, and Crawley could make entry into Plaintiff's residence.

60.     Defendants Garcia, Ethridge, and Crawley made entry into Plaintiff's residence without exigent circumstances or probable cause, a warrant, or consent to enter.

61.     Defendants West, Garcia, Ethridge, and Crawley offended the Constitution by making entry into Plaintiff's home without any lawful basis.

62.     Defendants West, Garcia, Ethridge, and Crawley acted intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

63.     As a direct and proximate result of these Defendants' unlawful actions, Plaintiff was harmed.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Seizure)

64.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

65.    Plaintiff asserts this claim against Defendant West and a Defendant Doe.

66.    Plaintiff has a clearly established right to be free from unlawful arrest. *Freeman v. Gore*, 483 F.3d 404, 411-13 (5th Cir. 2007).  The Fifth Circuit has previously acknowledged that removing a plaintiff from her doorway, and then placing her in handcuffs for up to 45 minutes constitutes an unlawful arrest in violation of the Fourth Amendment.  *Id*.  Defendants violated this right.

67.    Defendants West and Doe, at all relevant times, acted under the color of law.

68.    Defendant West arrested Plaintiff by forcefully and physically removing her from her doorway and then, together with Defendant Doe, placed handcuffs on her.  Defendant West then purposefully and forcefully kicked Plaintiff in the kneecap rupturing her ACL and forcing her to the ground in pain.  Defendant West then hoovered over Plaintiff for at least 45 minutes.

69.    A reasonable person in Plaintiff's position would not feel free to leave and that they were under arrest.  Plaintiff was not interrogated.  She was not asked

to make any statements.  She was simply in the way of Defendant Officers making unlawful entry into her home.  There was no lawful purpose for detaining, arresting, or seizing Plaintiff.

70.     Defendants West and Doe lacked reasonable suspicion to detain Plaintiff.

71.     Defendants West and Doe lacked probable cause to arrest Plaintiff.

72.     There were simply no facts or information available to the officers that would provide any objectively reasonable basis to lawfully detain or arrest Plaintiff.

73.     Defendants knew that Plaintiff was not committing any crime or about to commit a crime.  She simply refused to provide consent to access her home without a warrant, and verbally opposed Defendant West's conduct.

74.     Plaintiff was removed from her doorway, handcuffed, and forced to remain in the location where Defendants West and Doe put her while Defendants Garcia, Ethridge, and Crawley made unlawful entry into her home.

75.     Once Defendants Garcia, Ethridge, and Crawley completed their unlawful search of Plaintiff's residence, they released Plaintiff from custody.

76.     Plaintiff was not charged with any crime.  Defendants did not detain her for any investigative purpose or safety reasons.  She was removed from the area so Clute Police Officers could have unfettered access to her home even though they lacked any probable cause or exigent circumstances, a warrant, or consent.

77.   Defendants' conduct was done intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

78.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Excessive Force)

79.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

80.   Plaintiff asserts this claim against Defendant West.

81.   Plaintiff, as an arrestee, has a clearly established right to be free from excessive force.  *See Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (recognizing that . . . once a suspect has been handcuffed and subdued . . . an officer's subsequent use of force is excessive"); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, and officer's subsequent use of force is excessive." (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)).  Defendant West violated this right.

82.   Defendants West while acting within the scope of their employment with the City of Clute Police Department, and under the color of law, attacked and

assaulted Plaintiff for no lawful reason.

83.    Once Plaintiff was in handcuffs, Defendant West knowingly kicked Plaintiff's kneecap so hard that it ruptured her ACL and forced her to fall to the ground.  Defendant West lacked any lawful basis to apply any force to Plaintiff, let alone this monstrous kick.

84.    The force used by Defendant West was objectively unnecessary, excessive, and unreasonable under the circumstances.  Rather, Defendant West embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause—and in fact caused—Plaintiff to suffer.

85.    As a result of Defendant West's force, Plaintiff suffered a ruptured ACL which had to be repaired in surgery.  This, together with other conduct alleged in this complaint, resulted in Plaintiff unable to work, falling into a deep depression, and attempting suicide.

86.    Defendant West knew that his force was excessive, as while he hovered over Plaintiff during her seizure, he attempted to apologize for his conduct.  His apology did not undo the harm caused to Plaintiff.

87.    As a direct and proximate result of Defendant West's unlawful conduct, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Search of Home)

88.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

89.    Plaintiff asserts this claim against Defendants Garcia, Ethridge, and Crawley.

90.    It is well-established that warrantless searches of homes are presumed unreasonable, and police bear a heavy burden in demonstrating an urgent need to conduct a warrantless search.  *Brigham City v. Stuart*, 547 U.S. 403 (2006). Defendants violated Plaintiff's Fourth Amendment right to be free from an unlawful search of her home.

91.    At all times relevant herein, Defendants Garcia, Ethridge, and Crawley were acting under the color of State law.

92.    After these defendants went into her home, they searched her bedroom, her closets, and bathroom.  These defendants conducted these searches without consent, a warrant, or exigent circumstances.

93.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Unlawful Search of Person)

94.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

95.    Plaintiff asserts this claim against Defendants West and Doe.

96.    It is well-established that police officers are not permitted to make a search incident to an unlawful arrest.  *See United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987) (explaining that an arrest must be lawful for the search-incident-to-arrest exception to apply).

97.    At all times relevant herein, Defendants West and Doe were acting under the color of State law.

98.    Defendants West and Doe unlawfully arrested Plaintiff as they lacked probable cause to arrest her.  Following this arrest, Defendants West and Doe unlawfully searched her, deprived her of her pocket knife, and never returned it to her.

99.    This search of Plaintiff was without probable cause, warrant, consent, or exigent circumstances.  The search was not permitted under any specific exceptions to the warrant requirement.

100.    After these defendants went into her home, they searched her bedroom, her closets, and bathroom.  These defendants conducted these searches without

consent, a warrant, or exigent circumstances.

101.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.  She also suffered actual damages for the value of the pocketknife.

<u>**COUNT VII**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**</u>
<u>**(Fourteenth Amendment – Failure to Provide Medical Care)**</u>

102.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

103.   Plaintiff asserts this claim against all Defendant Officers.

104.   At all times relevant herein, Defendants were acting under the color of State law.

105.   The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured in their custody.  While Plaintiff was an arrestee or pretrial detainee in the custody of Defendants, Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

106.   Plaintiff has a clearly established right to not have her serious medical needs met with deliberate indifference.  A state actor violates the constitutional rights of a person in custody by acting with deliberate indifference to the person's serious medical needs. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020), cert.

denied, 141 S. Ct. 1379 (2021).

107.   Defendant officers observed West kick the handcuffed-Plaintiff in the kneecap hard which caused her to fall to the ground and screech in pain.  Her knee, which was ruptured by Defendant West's brute force, was immediately and visibly swollen.

108.   In the least, Defendant West knew that he kicked her with an excessive amount of force; that it caused her to fall to the ground; that Spaulding cried out in pain, and that her knee swelled up.

109.   Defendant West knew that he was in the wrong, because he apologized to Plaintiff.  He, however, did not ask her if she was ok, evaluate her, or call for medics to evaluate her.  He left her on the ground in pain while his fellow officers continued to search Plaintiff's home without any legal basis.

110.   At all times relevant, Plaintiff was an arrestee in the custody of Defendant Officers.

111.   Defendant officers knew that Plaintiff was injured but disregarding her injuries failing to take reasonable measures to abate the injuries.  Not only did they observe Defendant West's assault, but Plaintiff complained to them of the pain.  She was ignored.

112.   These officers acted with deliberate indifference even making jokes about Plaintiff's inability to stand or walk.  Defendants knowingly failed to provide

or get immediate, necessary medical care for Plaintiff's serious medical need in deliberate indifference to the risk of serious harm to Plaintiff.

113.   It took over an hour for the officers to even ask Plaintiff if she needed medical attention.  By then, the officers brought over an EMS that they had private conversations with which produced for an uncomfortable situation where Plaintiff was treated poorly and did not feel comfortable going with them.

114.   Instead, Plaintiff went to the emergency room for treatment.  She continues to receive treatment today for her ruptured ACL.

115.   On September 20, 2022, Plaintiff had surgery to repair her ruptured ACL and is continuing post-surgery treatment.

116.   Plaintiff suffered additional pain because Defendant Officers unreasonably delayed her medical treatment.

117.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Bystander Liability)

118.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

119.   Plaintiff asserts this claim against all Defendant Officers.

120.   At all times relevant herein, Defendants were acting under the color of State law.

121.   Defendants Doe observed Defendant West engage in unlawful conduct and violate Plaintiff's constitutional rights.  Defendant Officers had a constitutional duty to intervene but failed to do so despite having a reasonable opportunity to do so.  It is clearly established that a bystander-officer is liable under Section 1983 when that officer "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

122.   Defendant Officers observed Defendant West unlawfully arrest and assault Plaintiff.  Defendant Officers knew that Plaintiff did not commit any crime but did not prevent Defendant West from violating Plaintiff's constitutional rights or intervening to stop the violations.

123.   Defendants had the opportunity and the means to prevent harm from occurring.

124.   Defendants West and Does observed officers make unlawful entry into Plaintiff's home and conduct an unlawful search, but Defendants West and Does failed to intervene.

125.   Defendant West knew that his fellow officers were illegally entering and searching Plaintiff's home.  His mission was to allow them to engage in this

conduct unimpeded by removing the objecting Plaintiff from the doorway and area. He completed this mission when he threw Plaintiff into a window, handcuffed her, and then kicked her knee cap and hovered over her until his fellow officers completed their illegal entry and search.

126.   Defendants either joined in committing violations or stood by and let the harm unfold.

127.   Defendants Doe and other Defendant Officers had ample opportunity and time to intervene.

128.   At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

129.   At all times relevant, Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiff, to illegally enter her home and otherwise violate Plaintiff's constitutional and statutory rights.

130.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

**COUNT IX**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(_Monell_ Liability)**

131.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set

forth above and incorporates them as if fully set forth herein.

**A. City of Clute's policies, practices, and custom on the use of force, unlawful seizure, and unlawful entry were a moving force behind violating Plaintiff's constitutional rights to be free from excessive force.**

132.   The City of Clute is liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the City of Clute police department, of which the City Council, the City Manager, the Mayor, and the Chief of Police all had actual or constructive knowledge that was a moving force behind the constitutional violates alleged herein.

133.   Defendants Sergeant Garcia, Officers West, Doe and other Officers were acting under the color of law and acting pursuant to customs, practices, and policies of the City of Clue and the Clute Police Department in regard to the use of force as authorized or ratified by the Policymakers—Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet—when Defendants West, Garcia, Ethridge, and Crawley deprived Plaintiff of rights and privileges secured to her by the Fourth Amendment to the United States Constitution. This was a direct result of the City of Clute failing to provide proper training in the use of force, which is a violation of 42 U.S.C. § 1983.

134.   The unwritten policies, practices, or custom was evident as every officer on the scene (including supervisor Kyle Garcia) saw what Officer West did

to Plaintiff, and rather than do anything to intervene or correct it, they continued violating Plaintiff's rights by entering her home without any lawful basis and searched it.

135.   Detaining and arresting individuals, and conducting searches are part of a police officer's duties.  Policymakers know this.  They are required to implement policies that require appropriate and measured responses while also protecting the rights of citizens.  The policies, practices, and custom of the City of Clute's police department directly contradict these considerations.

136.   The Policymakers knew of these policies, practices, and custom but acted with deliberate indifference.  These violations should have been apparent to the Policymakers.

137.   Defendants West, Garcia, Ethridge, and Crawley acted on the City's unconstitutional policies, practices, and custom, which was authorized or ratified by the Policymakers, specifically the City Manager and Chief of Police, when Defendant Officers deprived Plaintiff of rights and privileges secured to her by the First and Fourth Amendments of the Constitution—when West unlawfully arrested Plaintiff and used excessive force to allow his fellow officers to gain unfettered access to Plaintiff's home without any lawful basis.  At no time did Plaintiff pose any actual threat to officers or others; she was not committing any crime; and she was not resisting arrest or attempting to flee.  She was simply expressing her First

Amendment right in objecting to Clute PD's attempt to unlawfully enter her home, and she was physically assaulted for it.

138.    The City of Clute's use of force, unlawful seizure, and unlawful entry policies, practices, and custom were the moving force behind Plaintiff's constitutional violations.

**B. The City of Clute failed to train its officers on use of force, lawful arrests, lawful searches of persons and property, and the duty to intervene.**

139.    The City and its Policymakers failed to adequate train, supervise or discipline its employees regarding the unnecessary and excessive use of force, the wrongful arrest of Plaintiff, and the unlawful entry and search of her person and home.   Plaintiff sat in handcuffs for at least 45 minutes while in severe pain. Defendants knew that Plaintiff did not commit any crime.

140.    "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

141.    The failure to train, supervise or discipline its employees in this manner reflects a deliberate indifference on the parts of the City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

142.    Defendants' violations against Plaintiff were obvious and a highly

predictable consequence of insufficient training on the use of force, the lawfulness of seizures and searches, and the duty to intervene.

143.   This single incident is sufficient to show deliberate indifference on part of the City and its Policymakers because these facts that led to the violations are such that it should have been apparent to the City these constitutional violations was the highly predictable consequence of a particular policy or failure to train.  *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003) citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000).

144.   The City and its Policymakers "know to a moral certainty that their police officers" are required to conduct certain functions, such as make arrests and conduct searches.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

145.   The most basic function of conducting searches and seizures, as well as using force, is to know the constitutional limits of each.  Without this knowledge, no officer could be expected to know how to make lawful arrests, lawful searches, or how to deploy reasonable force.

146.   Given that not a single officer questioned Defendant West's excessive use of force or unlawful arrest, and that every officer (including supervisor Sergeant Garcia) made entry into a home that a well-trained officer would have recognized was without consent, a warrant, or exigent circumstances.

147.   There is a casual connection between the failure to train and the violation of Plaintiff's rights.  Had Defendant officers been property trained as to Plaintiff's rights they would have never assaulted her or arrested her.  They would have intervened and stopped Defendant West's conduct.  They would not have made entry into Plaintiff's home and then searched it.  Every officer present at Plaintiff's residence on March 15 and 16, 2022, acted contrary to how a well-trained officer would have acted in similar circumstances.

148.   There is a constitutional duty to not interfere with Plaintiff's right to be free from excessive force and unreasonable searches and seizures that are likely to arise "in recurrent situations that a particular employee is certain to face." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 626 (5th Cir. 2018).

149.   These daily functions of officers, to conduct searches and seizures with a lawful purpose, requires training to ensure that an individual's constitutional freedoms are not being violated.  Had any one of the many Clute police officers on scene been properly informed and trained on Plaintiff's clearly established rights, then Plaintiff would not have been injured—or at the very least—would have been spared from further injury.  Defendants, if well-trained, would not have entered Plaintiff's home and searched it.

150.   The City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor

Calvin Shiflet developed and maintained a policy of deficient training of its police force in lawful searches, the use of force, and in the apprehension and wrongful detention of individuals. The City's training is designed and implemented by Mayor Calvin Shiflet, City Manager C.J. Snipes and Chief of Police James Fitch.

151.   Defendant City and its Policymakers knew it was inevitable that their officers would be put in situations where they were required to interact with citizens, make lawful determinations in conducting searches and seizures, and be required to apply a level of objectively reasonable force. Defendant City was aware that not training on these situations would lead to the exact constitutional violations detailed throughout this complaint.

152.   Defendant City's failure to provide training is the kind of deliberate indifference that creates municipal liability for Section 1983 failure-to-train claims.

153.   Defendant City's failure to properly train its police officers regarding the use of force was the proximate cause of the violations of Plaintiff's constitutional rights.

**C. The City of Clute failed to adequately supervise or discipline its officers for excessive force, wrongful arrests, unlawful searches, and failing to intervene, and in failing to do so, ratified and encouraged the conduct of its officers.**

154.   Defendant On Plaintiff's governmental liability claim against the City of Clute for failing to supervise and discipline its officers for prior and current violations and the resulting lack of supervision:

(a)     The City and Police Chief failed to adequately supervise or discipline its employees in handling usual and recurring situations with which they deal;

(b)     Chief Fitch and City Manager Snipes were deliberately indifferent to the need to supervise or discipline its officers or employees adequately;

(c)     The failure to adequately supervise and discipline its officers proximately caused the deprivation of Plaintiff's constitutional rights; and

(d)     The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for removing Plaintiff from her doorway, arresting her, applying excessive force, entering her home and searching it—all without any lawful basis.

(e)     The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for failing to intervene to stop Defendant West's unlawful conduct, and to provide immediate medical treatment to the arrested Plaintiff.

155.   Despite having knowledge of Defendant Officers' violations of the Clute Police Department's use of force policies, and other best police practices, Defendant City and its Policymakers refused to adequately discipline Defendant Officers.  The City's Policymakers were aware of the out-of-control behavior of Defendant West but failed to take any actions.  Defendant City's failure to adequately supervise or discipline its officers was therefore the moving force behind Plaintiff's damages.

156.   Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

**D. The City of Clute failed to adequately investigate, and in failing to do so, ratified and encouraged the conduct of its officers, including Defendant West.**

157.   In addition, Defendant City, as applicable, failed and refused to adequately investigate this officer-involved assault.   Defendant City allowed Defendant West to resign, but no other officer was investigated, counseled, or disciplined for their misconduct.   Defendant City used Defendant West as a scapegoat to protect its other officers by initiating an outcome determinative investigation that forced Defendant West to resign while clearing other officers of any wrongdoing.   The City and its Policymakers knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Plaintiff's home would be entered upon and searched illegally, and she would be assaulted and arrested if she vocalized her opposition to the illegal police activity—in all reasonable probability would occur.

158.   Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

159.   Defendant City is directly responsible for the individual Defendants' conduct described herein.

**E. The City of Clute falsely arrested Plaintiff although she did not commit a penal offense.**

160.   Plaintiff would show that the actions of Defendants West, Garcia,

Ethridge, and Crawley were objectively unreasonable and done in bad faith in that it resulted in the wrongful arrest of Plaintiff without probable cause, for no lawful reason. Plaintiff did not commit a crime, was not accused of committing a crime, and was not even a suspect in committing a crime. Plaintiff simply refused to give consent to enter her home and vocalized her opposition to Defendants attempting to unlawfully enter her home. Then, Officer West, for no objective reason, assaulted Plaintiff, arrested her, kicked her in the knee rupturing her ACL—all without any lawful purpose.

161. The only purpose for Defendant West's actions was to allow the City's officers to gain entry into Plaintiff's home unopposed—even though they were without probable cause, a warrant, exigent circumstances, or consent.

162. Plaintiff suffered damages because of her illegal search and seizure, and this arrest and search were done under the color of law.

## VI.
## DAMAGES

163. **Actual damages**. Defendants' acts or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff, and Defendants should be held jointly and severally liable for the physical injuries, mental anguish, emotional distress, loss of potential income, disfigurement, delay in medical treatment, and cost to replace her pocketknife and any other personal belongings damaged.

164. **Punitive/Exemplary Damages against individual defendants**. Punitive/exemplary damages are recoverable under Section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of each individual defendant, and more specifically, Defendant West, was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Plaintiff. As such Plaintiff requests punitive and exemplary damages from Defendants West, Garcia, Ethridge, Crawley, Jane Doe, John Doe 1, and John Doe 2.

165. Prejudgment and post judgment interest.

166. Costs of court.

167. Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

168. Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.
## JURY DEMAND

169. Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on the judgment at the legal rate; costs of court; attorney fees; and any other relief, both general and special, in law and equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Attorney-in-Charge
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby affirm that on this 27th day of September 2022, the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*