## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **WHITNEY SPAULDING,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 3:22-cv-00292** |
| | § | |
| **MATTHEW WEST,** | § | **JURY** |
| **SERGEANT KYLE GARCIA,** | § | |
| **OFFICER CHRISTOPHER** | § | |
| **ETHRIDGE, OFFICER CRAIG** | § | |
| **CRAWLEY,** | § | |
| **CITY OF CLUTE** | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JEFFREY V. BROWN, U.S. DISTRICT JUDGE:

COMES NOW, Plaintiff **WHITNEY SPAULDING,** by and through her attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this *Plaintiff's Second Amended Complaint and Jury Demand* complaining of Defendants, former Clute Police Officer **MATTHEW WEST,** Clute Police Sergeant **KYLE GARCIA,** Clute Police Officer **CHRISTOPHER ETHRIDGE,** Clute Police Officer **CRAIG CRAWLEY,** and the **CITY OF CLUTE**, more particularly the **CITY OF CLUTE POLICE DEPARTMENT** ("CPD"), and for cause would show the Honorable Court as follows:

# I.
# **INTRODUCTION**

1.      On or about March 16, 2022, in response to Ms. Spaulding refusing consent to City of Clute police officer Defendants to access and search her home— and verbally opposing the illegal conduct—former Clute Police Officer Matthew West came behind her, yanked her away from her apartment, threw her into a neighboring window by her neck, handcuffed her, and then, while again grabbing her by her neck, leg-swept her causing her to rupture her ACL (which required surgery to repair) and fall into a deep clinical depression.  With Spaulding out of the way, accompanying police officers (to include supervisor Sergeant Kyle Garcia) failed to intervene and made unlawful entry and search of Plaintiff's residence without a warrant, consent, or exigent circumstances.   Plaintiff remained in handcuffs for several minutes but was seized for about an hour before she was finally released.  Whitney M. Spaulding brings this civil action for damages against the City of Clute and its police officers, as well as other unidentified individuals for violating Plaintiff's rights under the First and Fourth Amendments of the United States Constitution and pursuant to 42 U.S.C. § 1983.

2.      Plaintiff alleges that the City of Clute and its policymakers, City Manager CJ Snipes ("Snipes"), Chief of Police James Fitch ("Fitch"), the Clute City Council, and Mayor of Clute Calvin Shiflet ("Shiflet") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer,

counsel or otherwise control officers who are known, or who should have been known to engage in the use of excessive force and make unlawful entries into private residences, including those officers repeatedly accused of such acts. The Policymakers, specifically City Manager Snipes, along with Chief of Police Fitch, had a duty, but failed to implement and/or enforce policies, practices, and procedures for the CPD that respected Plaintiff's constitutional rights. These failures resulted in Plaintiff sustaining a ruptured ACL, bruised arms, and psychological injuries for which she is still receiving treatment today. These incidents clearly violated Plaintiff's rights afforded to her under the United States Constitution and Section 1983. Plaintiff was harmed and seeks recovery in this lawsuit.

## II.
## JURISDICTION AND VENUE

3.      This is a civil rights action in which the Plaintiff seeks relief for the violations of her rights secured by 42 U.S.C. § 1983 and the Fourth Amendment.

4.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

5.      Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

6.      The events that gave rise to this lawsuit took place at The Life of Forest View Apartments located in Clute, Brazoria County, Texas.

## III.
## PARTIES

7.     Plaintiff **WHITNEY M. SPAULDING** ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of Clute, County of Brazoria, State of Texas.

8.     Defendant **CITY OF CLUTE** ("Defendant City") is a political subdivision of the State of Texas, acting under the color of state law, and is a person for the purposes of a 42 U.S.C. § 1983 action.  Defendant is responsible for the policies, practices, and procedures of its Police Department and individual officers.

9.     Defendant **MATTHEW WEST** ("Defendant West") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.  Defendant West was permitted to resign in lieu of termination which allowed him to retain his peace officer license and avoid any discipline or criminal charges.

10.     Defendant **KYLE GARCIA** ("Defendant Garcia") was at all pertinent times a police Sergeant employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer and supervisor.

11.     Defendant **CHRISTOPHER ETHRIDGE** ("Defendant Ethridge") was at all pertinent times a police officer employed by the City of Clute and was at

all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

12.     Defendant **CRAIG CRAWLEY** ("Defendant Crawley") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

13.     Each and all the acts of Defendant Officers alleged herein were committed by said Officers while acting within the scope of their employment, each with their respective law enforcement office: the Clute Police Department, the Richwood Police Department, and/or the Brazoria County Sheriff's Office.

14.     Each and all of the acts of Defendant Officers were committed by these Officers despite their knowledge that they were engaging in unlawful and unconstitutional acts.   Yet despite this knowledge, they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## IV.
## STATEMENT OF FACTS

15.     This action involves an incident that occurred starting late in the evening of March 15, 2022, and ending early the morning of March 16, 2022, at or around about 5:00 A.M., which is addressed herein chronologically.

16.    On the evening of March 15, 2022 (and into the early morning of March 16, 2022), Clute police officers, together with Richwood police officers and Brazoria County Sheriff deputies, responded to a call of service for a fight at the apartment complex where Plaintiff resided.  During this call of service, Clute police officers arrested two individuals for minor offenses.  No one was arrested for fighting.

17.    Plaintiff was never suspected of committing any crime.  Defendant City's investigation report clearly notes that Plaintiff was not being aggressive or interfering.

18.    While on scene, Defendants West, Garcia, and Ethridge—all with the Clute Police Department—observed Plaintiff standing outside by her opened apartment door and noticed that occupants were inside her apartment.

19.    While Defendants Garcia and Ethridge detained someone out front of Plaintiff's apartment, individuals inside— with consent of Plaintiff—closed and locked Plaintiff's door.



20.    Defendant Ethridge then walked to Plaintiff's door and attempted to open it.

21.    Plaintiff Spaulding immediately and repeatedly informed Defendant Officers

that they were not permitted to open her door or make entry into her apartment.

22.     Defendant Garcia, the supervisor on the scene, informed Plaintiff that he was going to kick it in.  Defendant Etheridge encouraged Defendant Garcia to kick it in even though Defendants were without any authority to kick in the door.

23.     Defendant Garcia then used his flashlight to bang on the apartment window as Plaintiff continued criticizing the police and objecting to their unlawful conduct.

24.     Defendant West, in full view of Defendants Ethridge and Garcia, came up behind Plaintiff, and without announcing himself as a police officer, immediately grabbed the objecting Plaintiff by the neck and yanked her away from Defendants Garcia and Etheridge.



25.     Defendant West later informed Defendants Garcia, Etheridge, and Crawley, "I detained her because she was trying to block y'all."  He did not detain

her for officer safety or for investigation.  He detained her because she was voicing her objection to—and verbally criticizing—officers engaging in illegal conduct.

26.     Neither Defendant Garcia nor Etheridge intervened or stopped Defendant West.

27.     After Defendant West yanked Plaintiff back, he slammed her into the window and handcuffed her.

28.     After Defendant West handcuffed Plaintiff, he again grabbed her by the neck, positioned his left leg at her right leg, and in his own words—attempted to leg sweep her.  Defendant West forced Plaintiff to the ground in a manner that resulted in her right ACL rupturing.

 

29.     Defendants Garcia and Crawley observed this but did not intervene.

30.     Defendant Crawley then threatened to taser the handcuffed Plaintiff—apparently for no reason at all.



31.     With Plaintiff out of the way, Defendant Garcia, doing what Defendant Etheridge did a minute before, went to Plaintiff's door and attempted to open it.

32.     Recognizing that the door was locked, Defendant Garcia repeatedly banged on it.  He had Defendants Etheridge and Crawley stacked around him.

33.     Once someone opened the door, Defendant Garcia immediately ordered the two females to vacate.  At no time did anyone give consent for Defendants to enter.

34.     One of the two females inside immediately demanded that the Defendant Officers vacate or provide a warrant, stating that they did not have a right to be inside.  Defendant Ethridge pointed at that female and demanded that she "shut the hell up."

35.     Defendants Garcia, Etheridge, and Crawley (with West present inside) searched Plaintiff's apartment without a warrant, exigent circumstances, or consent.

36.     Defendants Garcia, Etheridge, Crawley, and West all knew that they unlawfully entered and searched Plaintiff's residence, but none of them intervened to stop the constitutional violations.

37.     They remained in possession of Plaintiff and her apartment for about an hour.

38.     At some point, Defendant West removed the handcuffs from Plaintiff, but she was still arrested.  She was subjected to their control and not free to leave. Despite other individuals being inside of Plaintiff's apartment (with the ability to enter and leave as they pleased), she was forcefully prevented from entering and forced to remain within the presence of officers.



39.     After Defendant Officers completed their warrantless search of Plaintiff's residence, an officer observed Plaintiff having difficulty walking, so EMS was called.

40.     Plaintiff pointed out that she thought Defendant West broke her leg, and that she would see him in court.  West retorted that he would see her there as he bragged about getting paid to go to court.

41.     When the ambulance arrived, Plaintiff saw one of the officers whispering to the EMT.  This concerned Plaintiff, as she did not trust the Defendant Officers.

42.     When the EMT approached Plaintiff, Plaintiff told her she could not walk and asked for crutches.  The EMT questioned her ability to walk.  Plaintiff no longer felt safe going with the EMT, so she asked them to leave.

43.     Several hours passed.  Plaintiff still could not walk comfortably, and her leg hurt so much she was unable to sleep.  Since she could not drive, Plaintiff

called a friend to take her to the nearest hospital, UTMB Health's Angleton campus.

44.     Plaintiff was diagnosed with a ruptured ACL.  She had surgery to repair the rupture on or about September 20, 2022.

45.     On March 17, 2022, Plaintiff went to Defendant City's police department wearing an immobilizer on her knee to submit a complaint.

46.     Despite her complaint being investigated and allegations against Defendant West sustained, not a single officer was disciplined for their conduct.

47.     Defendant Garcia was questioned on his ability to control the scene, and he and Etheridge were questioned about whether they knew when they could kick in a door.  The interviewer raised concern about their knowledge about the law in this regard, but nothing came of it.

48.     West was accused of using excessive force when he slammed the handcuffed Plaintiff down.  In his recorded statements, he originally attempted to state that Plaintiff was going to strike him.  This was false.  Once West was shown body worn camera from other officers, he appeared to accept that he used excessive force on the handcuffed Plaintiff (and at least two other individuals).  He also stated that he went through this before and knew what was going to happen.  He ultimately resigned.

49.     While there were violations sustained against Defendant West for using excessive force, making inappropriate comments, and failing to have his body worn

camera in violation of department policy, the Policymakers did not investigate anyone for their failure to intervene, or for making unlawful entry into Plaintiff's residence, or for unlawfully searching it.

50.     At the time of the incident, Plaintiff, a factory worker, was temporarily laid off.  She was recently offered her job back but had to decline because she was unable to meet the physical demands of her job.

51.     The psychological injuries of this incident were great.  With the initial assault by West, the failure of the other officers to act, the failure of the City to investigate and discipline, together with Plaintiff unable to work due to her injury, and the need for surgery (which may never result in a full recovery) caused Plaintiff to fall into a deep depression.

52.     Plaintiff attempted suicide by swallowing a handful of pills and was admitted for inpatient treatment.   She was ultimately diagnosed with major depressive order with the March 16, 2022, incident being the triggering event.

53.     On September 20, 2022, Plaintiff had surgery to repair the ACL rupture caused by Defendant West.  It is still too early to evaluate whether the surgery was successful, whether additional surgery is needed, and what the full treatment plan will entail.  She is in the middle of a treatment plan that will span for at least a few months.  This information will be fully developed in discovery.

54.     Plaintiff has a long road to recovery ahead of her.  She filed this lawsuit

to seek answers, justice, and monetary relief.

## V.
## CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment – Retaliation)

55.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

56.     Plaintiff asserts this claim against Defendant West.

57.     It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, (1974) (Powell, J., concurring)) ("Trained officers must exercise restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of protected speech activities."); *see City of Hous. v. Hill*, 482 U.S. 451, 462 (1987) ("[The] First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Defendant West violated this right.

58.     At all times relevant, Defendants West was acting under color of State law.

59.     Defendant West detained Plaintiff and used force against her by yanking her arm, grabbing her neck, and slamming her into her neighbor's wall while applying his body weight against her—and then arrested her and leg-swept her— because of her verbal criticism of him and other officers, and because she vocalized her objections to them trying to unlawfully enter her apartment.  Plaintiff used speech to inform Officer West that he was engaged in illegal activity.  Plaintiff also pointed out to Defendant West that he did not have his body worn camera on him. Plaintiff's verbal criticism was met with force and arrest.  *Hill*, 482 U.S. at 462-63 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

60.     The unlawful arrest and use of force by Defendant West—which injured Plaintiff by rupturing her ACL and then caused psychological injuries—was motivated by Plaintiff's speech and it would chill a person of ordinary firmness from engaging in similar protected speech. *See, e.g.*, *Brooks v. City of West Point*, 639 F. App'x 986, 987 (5th Cir. 2016) ("[A]rrest for cursing a police officer was an injury that would chill the speech of a person of ordinary firmness.").

61.     Officer West did not have any non-retaliatory reason to yank Plaintiff, grab her by the neck, throw Plaintiff into her neighbor's window, to arrest her, or leg sweep her or again hold her by the neck while handcuffed, but for Plaintiff exercising her right to free speech.  Plaintiff was not a safety threat or committing any crime.

She simply verbally opposed Defendant Officers attempting to unlawfully enter her home and verbally criticized them.

62.    Officer West is heard on video explaining to Plaintiff that he detained her because she was hollering and yelling and he had to "get in there and drag her away" when she objected to Defendants attempting to open her apartment door.

63.    Defendant West, intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence, retaliated against Plaintiff for engaging in protected conduct.

64.    As a direct and proximate result of Defendant West's unlawful actions, Plaintiff was harmed.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Illegal Entry)

65.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

66.    Plaintiff asserts this claim against Defendants West, Garcia, Ethridge, and Crawley.

67.    It is clearly established that warrantless entry into a home is unconstitutional. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) ("[T]he Fourth Amendment's protection of curtilage has long been black letter law."). The Fifth Circuit has held that, "[u]nder the Fourth Amendment, a warrantless intrusion into a

person's home is 'presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the intrusion." *Rockwell v. Brown*, 664 F.3d 985, 994-96 (5th Cir. 2011) (analyzing a warrantless entry claim separately from a warrantless arrest claim).  Defendants violated this right.

68.     At all times relevant, Defendants West, Garcia, Ethridge, and Crawley were acting under color of State law.

69.     Defendants did not have a warrant, exigent circumstances, or consent to enter Plaintiff's apartment.

70.     Plaintiff and another female outside the apartment repeatedly told Defendants they were not permitted to enter.  Defendants Garcia and Ethridge then threatened to kick the door in before both Plaintiff and the female were detained.

71.     Defendants Ethridge and Garcia, despite being told they were without consent to enter, attempted at different times to turn the door knob and gain entry into Plaintiff's apartment.

72.     Defendant Garcia continued banging on the window and door before an individual inside opened the door.  Defendants Garcia, Ethridge, and Crawley immediately went in and were met with verbal resistance from one of the females inside.

73.     The female inside told them the same thing that Plaintiff did—they did not have authority to be inside.  Defendant Ethridge, in front of Garcia and Crawley,

told that female to shut up.

74.   Defendant West soon joined these other defendants inside Plaintiff's residence.

75.   Defendants then searched Plaintiff's apartment.

76.   Defendants West, Garcia, Ethridge, and Crawley offended the Constitution by making entry into Plaintiff's home without any lawful basis.

77.   Defendants West, Garcia, Ethridge, and Crawley acted intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

78.   As a direct and proximate result of these Defendants' unlawful actions, Plaintiff was harmed.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Seizure)

79.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

80.   Plaintiff asserts this claim against Defendant West.

81.   Plaintiff has a clearly established right to be free from unlawful arrest. *Freeman v. Gore*, 483 F.3d 404, 411-13 (5th Cir. 2007).  The Fifth Circuit has previously acknowledged that removing a plaintiff from her doorway, and then placing her in handcuffs for up to 45 minutes constitutes an unlawful arrest in violation of the Fourth Amendment.  *Id*.  Defendants violated this right.

82.   Defendant West, at all relevant times, acted under the color of law.

83.   Defendant West arrested Plaintiff by forcefully and physically removing her from her doorway and then placed handcuffs on her.  Defendant West then purposefully and forcefully leg-swept the handcuffed Plaintiff rupturing her ACL and forcing her to the ground in pain.

84.   Defendant West removed the handcuffs after several minutes, but she was still detained and not free to leave or enter her apartment.

85.   During her seizure, Defendant West never informed her what crime she had committed.  He never identified her.  He simply seized her because she was verbally criticizing defendants and refusing to give them consent to her apartment.

86.   The seizure was retaliatory, and for the sole purpose of silencing Plaintiff while also getting her out of the way so Defendants could unlawfully enter and search her apartment.  There was no lawful purpose for detaining, arresting, or seizing Plaintiff.

87.   Defendant West lacked reasonable suspicion to detain Plaintiff.

88.   Defendants West and Doe lacked probable cause to arrest Plaintiff.

89.   There were simply no facts or information available to the officers that would provide any objectively reasonable basis to lawfully detain or arrest Plaintiff.

90.   Defendants knew that Plaintiff was not committing any crime or about to commit a crime.  She simply refused to provide consent to access her home

without a warrant, and verbally opposed Defendant West's conduct.

91.     Plaintiff was removed from her doorway, handcuffed, and forced to remain in the location where Defendant West put her while Defendants Garcia, Ethridge, and Crawley made unlawful entry into her home.

92.     Once Defendants Garcia, Ethridge, and Crawley completed their unlawful search of Plaintiff's residence, they released Plaintiff from custody.

93.     Plaintiff was not charged with any crime.  Defendants did not detain her for any investigative purpose or safety reasons.  She was removed from the area so Clute Police Officers could have unfettered access to her home even though they lacked any probable cause or exigent circumstances, a warrant, or consent.

94.     Defendant West's conduct was done intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

95.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Excessive Force)

96.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

97.     Plaintiff asserts this claim against Defendant West.

98.     Plaintiff, as an arrestee, has a clearly established right to be free from excessive force.  *See Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (recognizing that . . . once a suspect has been handcuffed and subdued . . . an officer's subsequent use of force is excessive"); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, and officer's subsequent use of force is excessive." (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)).  Defendant West violated this right.

99.     Defendants West while acting within the scope of their employment with the City of Clute Police Department, and under the color of law, attacked and assaulted Plaintiff for no lawful reason.

100.    Once Plaintiff was in handcuffs, Defendant West intentionally grabbed Plaintiff by the neck, straddled her right leg, and leg-swept her for no lawful reason. Defendant West's force ruptured Plaintiff's ACL and caused psychological injuries. Defendant West lacked any lawful basis to apply any force to the handcuffed Plaintiff.

101.    The force used by Defendant West was objectively unnecessary, excessive, and unreasonable under the circumstances.  Rather, Defendant West embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause—and in fact caused—Plaintiff to suffer.

102.   As a result of Defendant West's force, Plaintiff suffered a ruptured ACL which had to be repaired in surgery.  This, together with other conduct alleged in this complaint, resulted in Plaintiff unable to work, falling into a deep depression, and attempting suicide.

103.   Defendant West knew that his force was excessive, as while he hovered over Plaintiff during her seizure, he attempted to apologize for his conduct.  His apology did not undo the harm caused to Plaintiff.

104.   As a direct and proximate result of Defendant West's unlawful conduct, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

### COUNT V
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Search of Home)

105.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

106.   Plaintiff asserts this claim against Defendants Garcia, Ethridge, and Crawley.

107.   It is well-established that warrantless searches of homes are presumed unreasonable, and police bear a heavy burden in demonstrating an urgent need to conduct a warrantless search.  *Brigham City v. Stuart*, 547 U.S. 403 (2006). Defendants violated Plaintiff's Fourth Amendment right to be free from an unlawful

search of her home.

108.   At all times relevant herein, Defendants Garcia, Ethridge, and Crawley were acting under the color of State law.

109.   After these defendants went into her home, they searched her bedroom, her closets, and bathroom.   These defendants conducted these searches without consent, a warrant, or exigent circumstances.

110.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Bystander Liability)

111.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

112.   Plaintiff asserts this claim against Defendants Garcia and Ethridge.

113.   At all times relevant herein, Defendants were acting under the color of State law.

114.   Defendants Garcia and Ethridge observed Defendant West engage in unlawful conduct and violate Plaintiff's constitutional rights by yanking her arm, grabbing her neck, and applying body weight on her, and then put her in handcuffs simply because she vocalized opposition to gaining entry to her apartment and

criticized officers. Defendants Garcia and Ethridge had a constitutional duty to intervene but failed to do so despite having a reasonable opportunity to do so. It is clearly established that a bystander-officer is liable under Section 1983 when that officer "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

115.    Defendant Officers observed Defendant West unlawfully arrest and assault Plaintiff. Defendant Officers knew that Plaintiff did not commit any crime but did not prevent Defendant West from violating Plaintiff's constitutional rights or intervening to stop the violations.

116.    Defendants had the opportunity and the means to prevent harm from occurring.

117.    Defendants either joined in committing violations or stood by and let the harm unfold.

118.    Defendants had ample opportunity and time to intervene.

119.    At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

120.    At all times relevant, Defendants Garcia and Ethridge intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiff, to illegally enter

her home and otherwise violate Plaintiff's constitutional and statutory rights.

121.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Bystander Liability)

122.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

123.   Plaintiff asserts this claim against Defendants Garcia and Ethridge.

124.   At all times relevant herein, Defendants were acting under the color of State law.

125.   Defendants Garcia and Ethridge observed Defendant West engage in unlawful conduct and violate Plaintiff's constitutional rights by grabbing her neck while handcuffed, and then leg-sweeping her to the ground while holding onto her neck.  Defendants Garcia and Ethridge had a constitutional duty to intervene but failed to do so despite having a reasonable opportunity to do so.  It is clearly established that a bystander-officer is liable under Section 1983 when that officer "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

126.   Defendants Garcia and Ethridge observed Defendant West unlawfully assault the handcuffed Plaintiff.  Defendants knew that there was not any objective purpose for West assaulting Plaintiff, but they did not intervene or stop him from violating Plaintiff's constitutional rights.

127.   Defendants had the opportunity and the means to prevent harm from occurring.

128.   Defendants either joined in committing violations or stood by and let the harm unfold.

129.   Defendant had ample opportunity and time to intervene.

130.   At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

131.   At all times relevant, Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiff, to illegally enter her home and otherwise violate Plaintiff's constitutional and statutory rights.

132.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Bystander Liability)

133.   Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

134.   Plaintiff asserts this claim against Defendants Garcia, West, Ethridge, and Crawley.

135.   At all times relevant herein, Defendants were acting under the color of State law.

136.   Defendants observed the other engage in unlawful conduct and violate Plaintiff's constitutional rights unlawfully entering and searching her home.  Each Defendant had a constitutional duty to intervene but failed to do so despite having a reasonable opportunity to do so.

137.   Defendants Garcia and Ethridge knew the door was locked and knew that Plaintiff objected to them entering.  They did so anyway.

138.   Inside the home, Defendants were met with additional criticism and told by another they did not have permission to be there.

139.   Defendants remained inside Plaintiff's home for 30-45 minutes ignoring all opportunities to vacate and procure a warrant—or to take any intervening action whatsoever.

140.   Instead, Defendants Garcia, Ethridge, and Crawley searched the

residence without a warrant, exigent circumstances, or consent.

141.   They each had a duty, to include West, to stop each other from continuing the unlawful intrusion on Plaintiff by being in her residence and searching it.

142.   It is clearly established that a bystander-officer is liable under Section 1983 when that officer "had reasonable opportunity to realize the excessive nature of the force" but failed "to intervene to stop it." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

143.   Defendants had the opportunity and the means to prevent harm from occurring.

144.   Defendants observed each other make unlawful entry into Plaintiff's home and conduct an unlawful search, but they all failed to intervene and cease the conduct.

145.   Defendants knew they were illegally entering and searching Plaintiff's home.

146.   Defendants either joined in committing violations or stood by and let the harm unfold.

147.   At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

148.   At all times relevant, Defendant Officers intentionally, knowingly,

maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use excessive force against Plaintiff, to illegally enter her home and otherwise violate Plaintiff's constitutional and statutory rights.

149.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## COUNT IX
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Supervisor Liability)

150.      Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

151.      Plaintiff asserts this claim against Defendant Garcia.

152.      At all times relevant herein, Defendant was the supervisor on the scene, and in charge of Defendants West, Ethridge, and Crawley, and at all times was acting under the color of State law.

153.      Defendant Garcia acted, or failed to act, with deliberate indifference, when he allowed Defendant West to seize Plaintiff for objecting to Garcia's attempt to unlawfully enter her apartment.  Defendant Garcia knew that Defendant West's conduct was wrong, but he allowed it to continue, and even represented to everyone that he would have the door kicked in.

154.      Clute PD came to the same conclusion—recognizing that

Defendant Garcia failed to control the scene or to de-escalate the situation. He was also criticized for not knowing the statutory limits for when he could kick a door in. He was not, however, found to have failed to intervene, or for entering Plaintiff's apartment unlawfully.

155.     Defendant Garcia also observed Defendant West use excessive force on Plaintiff after she was handcuffed. He failed to act in every way and allowed Defendant West to continue his assault and seizure on Plaintiff. He did not instruct Defendant West to release her or to check on her. Instead, he acknowledged that she was out of the way, and he continued his unlawful entry and search into Plaintiff's residence.

156.     Inside the residence, there was a locked bedroom door. Defendant Garcia gave the order to kick it in—knowing that he was without statutory authority (or any lawful authority), consent, exigent circumstances, or a warrant.

157.     At all times relevant, Defendant Garcia intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed Defendant West, his subordinate officer, to use unlawfully seize, and the use excessive force, against Plaintiff, to permit him to illegally enter her home and otherwise violate Plaintiff's constitutional and statutory rights.

158.     As a direct and proximate result of Defendant Garcia's unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury,

and for pain, mental anguish, humiliation, and embarrassment.

**COUNT X**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(*Monell* Liability)**

159.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

**A. City of Clute's policies, practices, and custom on the use of force, unlawful seizure, and unlawful entry were a moving force behind violating Plaintiff's constitutional rights to be free from excessive force.**

160.   The City of Clute is liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the City of Clute police department, of which the City Council, the City Manager, the Mayor, and the Chief of Police all had actual or constructive knowledge that was a moving force behind the constitutional violates alleged herein.

161.   Defendants Sergeant Garcia, Officers West, Ethridge, and Crawley were acting under the color of law and acting pursuant to customs, practices, and policies of the City of Clue and the Clute Police Department in regard to the use of force as authorized or ratified by the Policymakers—Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet—when Defendants West, Garcia, Ethridge, and Crawley deprived Plaintiff of rights and privileges secured to her by the Fourth Amendment to the United States

Constitution. This was a direct result of the City of Clute failing to provide proper training in the use of force, which is a violation of 42 U.S.C. § 1983.

162.   The unwritten policies, practices, or custom was evident as every officer on the scene (including supervisor Kyle Garcia) saw what Officer West did to Plaintiff, and rather than do anything to intervene or correct it, they continued violating Plaintiff's rights by entering her home without any lawful basis and searched it.

163.   Detaining and arresting individuals, and conducting searches are part of a police officer's duties.  Policymakers know this.  They are required to implement policies that require appropriate and measured responses while also protecting the rights of citizens.  The policies, practices, and custom of the City of Clute's police department directly contradict these considerations.

164.   The Policymakers knew of these policies, practices, and custom but acted with deliberate indifference.  These violations should have been apparent to the Policymakers.

165.   Defendants West, Garcia, Ethridge, and Crawley acted on the City's unconstitutional policies, practices, and custom, which was authorized or ratified by the Policymakers, specifically the City Manager and Chief of Police, when Defendant Officers deprived Plaintiff of rights and privileges secured to her by the First and Fourth Amendments of the Constitution—when West unlawfully arrested

Plaintiff and used excessive force to allow his fellow officers to gain unfettered access to Plaintiff's home without any lawful basis. At no time did Plaintiff pose any actual threat to officers or others; she was not committing any crime; and she was not resisting arrest or attempting to flee. She was simply expressing her First Amendment right in objecting to Clute PD's attempt to unlawfully enter her home, and she was arrested and then physically assaulted for it.

166. The City of Clute's use of force, unlawful seizure, and unlawful entry policies, practices, and custom were the moving force behind Plaintiff's constitutional violations.

**B. The City of Clute failed to train its officers on use of force, lawful arrests, lawful searches of homes, and the duty to intervene.**

167. The City and its Policymakers failed to adequate train, supervise or discipline its employees regarding the unnecessary and excessive use of force, the wrongful arrest of Plaintiff, and the unlawful entry of someone's home.

168. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

169. The failure to train, supervise or discipline its employees in this manner reflects a deliberate indifference on the parts of the City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet to the rights of the City's

inhabitants and is actionable under 42 U.S.C. § 1983.

170.   Defendants' violations against Plaintiff were obvious and a highly predictable consequence of insufficient training on the use of force, the lawfulness of seizures and searches, and the duty to intervene.

171.   This single incident is sufficient to show deliberate indifference on part of the City and its Policymakers because these facts that led to the violations are such that it should have been apparent to the City these constitutional violations was the highly predictable consequence of a particular policy or failure to train. *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003) citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000).

172.   Defendants were accused of using excessive force against multiple individuals that night—not just plaintiff.  When Clute PD investigated the incidents, it discovered that officers were not aware of when it was ok to kick in a door and enter a residence.  Officers were not aware of whether to leg-sweep an individual, or to press someone's face into the ground while they were in handcuffs (which happened to an individual on the scene, but not before this court).

173.   The City and its Policymakers "know to a moral certainty that their police officers" are required to conduct certain functions, such as make arrests and conduct searches. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

174.   The most basic function of conducting searches and seizures, as well

as using force, is to know the constitutional limits of each.  Without this knowledge, no officer could be expected to know how to make lawful arrests, lawful searches, or how to deploy reasonable force.

175.   Given that not a single officer questioned Defendant West's excessive use of force or unlawful arrest, and that every officer (including supervisor Sergeant Garcia) made entry into—and then searched a—home that a reasonably-trained officer would have recognized was without consent, a warrant, or exigent circumstances.

176.   A reasonably trained officer would have recognized Plaintiff's right to object to Defendants' warrantless entry into her home, and that she had a right to verbally criticize them.  A reasonably trained officer would have obtained a warrant to enter had they thought they had probable cause to enter.  They would not have detained or arrested Plaintiff for exercising her First Amendment right.  They would not have detained or arrested Plaintiff to remove her from the area while they gained unfettered access to her residence.

177.   There is a casual connection between the failure to train and the violation of Plaintiff's rights.  Had Defendant officers been property trained as to Plaintiff's rights they would have never assaulted her or arrested her.  They would have intervened and stopped Defendant West's conduct.  They would not have made entry into Plaintiff's home and then searched it (at least, not without a warrant).

Every officer present at Plaintiff's residence on March 15 and 16, 2022, acted contrary to how a reasonably trained officer would have acted in similar circumstances.

178.   There is a constitutional duty to not interfere with Plaintiff's right to be free from excessive force and unreasonable searches and seizures that are likely to arise "in recurrent situations that a particular employee is certain to face." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 626 (5th Cir. 2018).

179.   These daily functions of officers, to conduct searches and seizures with a lawful purpose, requires training to ensure that an individual's constitutional freedoms are not being violated.  Had any one of the many Clute police officers on scene been properly informed and trained on Plaintiff's clearly established rights, then Plaintiff would not have been injured—or at the very least—would have been spared from further injury.  Defendants, if well-trained, would not have entered Plaintiff's home and searched it.

180.   The City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet developed and maintained a policy of deficient training of its police force in lawful searches, the use of force, and in the apprehension and wrongful detention of individuals.  The City's training is designed and implemented by Mayor Calvin Shiflet, City Manager C.J. Snipes and Chief of Police James Fitch.

181.   Defendant City and its Policymakers knew it was inevitable that their officers would be put in situations where they were required to interact with citizens, make lawful determinations in conducting searches and seizures, and be required to apply a level of objectively reasonable force.  Defendant City was aware that not training on these situations would lead to the exact constitutional violations detailed throughout this complaint.

182.   Defendant City's failure to provide training is the kind of deliberate indifference that creates municipal liability for Section 1983 failure-to-train claims.

183.   Defendant City's failure to properly train its police officers regarding the use of force was the proximate cause of the violations of Plaintiff's constitutional rights.

**C. The City of Clute failed to adequately supervise or discipline its officers for excessive force, wrongful arrests, unlawful searches, and failing to intervene, and in failing to do so, ratified and encouraged the conduct of its officers.**

184.   Defendant On Plaintiff's governmental liability claim against the City of Clute for failing to supervise and discipline its officers for prior and current violations and the resulting lack of supervision:

(a)   The City and Police Chief failed to adequately supervise or discipline its employees in handling usual and recurring situations with which they deal;

(b)   Chief Fitch and City Manager Snipes were deliberately indifferent to the need to supervise or discipline its officers or employees adequately;

(c)   The failure to adequately supervise and discipline its officers

proximately caused the deprivation of Plaintiff's constitutional rights; and

(d)  The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for removing Plaintiff from her doorway, arresting her, applying excessive force, entering her home and searching it—all without any lawful basis.

(e)  The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for failing to intervene to stop Defendant West's unlawful conduct, and to provide immediate medical treatment to the arrested Plaintiff.

185.  Despite having knowledge of Defendant Officers' violations of the Clute Police Department's use of force policies, and other best police practices, Defendant City and its Policymakers refused to adequately discipline Defendant Officers.  The City's Policymakers were aware of the out-of-control behavior of Defendant West but failed to take any actions.

186.  On the night in question, Defendant West was accused of using excessive force against at least three different individuals.  He also acknowledged in in the post-incident investigation that he knew the drill, that he had been through this before.

187.  Defendant City's failure to adequately supervise or discipline its officers was therefore the moving force behind Plaintiff's damages.

188.  Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

**D. The City of Clute failed to adequately investigate, and in failing to do so, ratified and encouraged the conduct of its officers, including Defendant West.**

189.   In addition, Defendant City, as applicable, failed and refused to adequately investigate this officer-involved assault.   Defendant City allowed Defendant West to resign, but no other officer was investigated, counseled, or disciplined for their misconduct.   Defendant City used Defendant West as a scapegoat to protect its other officers by initiating an outcome determinative investigation that forced Defendant West to resign while clearing other officers of any wrongdoing.  The City and its Policymakers knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Plaintiff's home would be entered upon and searched illegally, and she would be assaulted and arrested if she vocalized her opposition to the illegal police activity—in all reasonable probability would occur.

190.   Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

191.   Defendant City is directly responsible for the individual Defendants' conduct described herein.

**E. The City of Clute falsely arrested Plaintiff although she did not commit a penal offense.**

192.    Plaintiff would show that the actions of Defendants West was objectively unreasonable and done in bad faith in that it resulted in the wrongful arrest of Plaintiff without probable cause, for no lawful reason.  Plaintiff did not commit a crime, was not accused of committing a crime, and was not even a suspect in committing a crime.  Plaintiff simply refused to give consent to enter her home and vocalized her opposition to Defendants Garcia, West, and Etheridge as Defendants Garcia and Etheridge attempted to unlawfully enter her home.  Then, Officer West, for no objective reason, assaulted Plaintiff, arrested her, and then leg-swept her while grabbing onto her neck, which ruptured her knee and eventually drove her into a suicidal depression—all without any lawful purpose.

193.    The only purpose for Defendant West's actions was to allow the City's officers to gain entry into Plaintiff's home unopposed—even though they were without probable cause, a warrant, exigent circumstances, or consent.

194.    Plaintiff suffered damages because of her illegal search and seizure, and this arrest and search were done under the color of law.

## XI.
## DAMAGES

195.    **Actual damages**.  Defendants' acts or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff, and Defendants should be held jointly and severally liable for the physical injuries, mental anguish, emotional distress, loss of potential income, disfigurement,

medical treatment, and pain and suffering.

196.   **Punitive/Exemplary Damages against individual defendants**.
Punitive/exemplary damages are recoverable under Section 1983 when the conduct
is shown to be motivated by evil motive or intent, or when it involves reckless or
callous indifference to the federally protected rights of others.  Here, the conduct of
each individual defendant, and more specifically, Defendant West, was done with
evil motive or intent, or at the very least, was reckless or callously indifferent to the
federally protected rights of Plaintiff.   As such Plaintiff requests punitive and
exemplary damages from Defendants West, Garcia, Ethridge, and Crawley.

197.   Prejudgment and post judgment interest.

198.   Costs of court.

199.   Reasonable and necessary attorney's fees incurred by the Plaintiff
through trial, and reasonable and necessary attorney fees that may be incurred by
Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise,
pursuant to 42 U.S.C. § 1988.

200.   Plaintiff seeks unliquidated damages in an amount that is within the
jurisdictional limits of the court.

## VII.
## JURY DEMAND

201.   Plaintiff hereby demands a trial by jury on all issues so triable, pursuant
to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on the judgment at the legal rate; costs of court; attorney fees; and any other relief, both general and special, in law and equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Attorney-in-Charge
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby affirm that on this 12th day of October 2022, the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*