# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **WHITNEY SPAULDING,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Cause No. 3:22-cv-00292** |
| | § | |
| **MATTHEW WEST,** | § | **JURY** |
| **SERGEANT KYLE GARCIA,** | § | |
| **OFFICER CHRISTOPHER** | § | |
| **ETHRIDGE, OFFICER CRAIG** | § | |
| **CRAWLEY,** | § | |
| **CITY OF CLUTE** | § | |

---

## PLAINTIFF'S THIRD AMENDED COMPLAINT AND JURY DEMAND

---

TO THE HONORABLE JEFFREY V. BROWN, U.S. DISTRICT JUDGE:

COMES NOW, Plaintiff **WHITNEY SPAULDING,** by and through her attorney, Brandon J. Grable of Grable Grimshaw PLLC, files this *Plaintiff's Third Amended Complaint and Jury Demand* complaining of Defendants, former Clute Police Officer **MATTHEW WEST,** Clute Police Sergeant **KYLE GARCIA,** Clute Police Officer **CHRISTOPHER ETHRIDGE,** Clute Police Officer **CRAIG CRAWLEY,** and the **CITY OF CLUTE**, more particularly the **CITY OF CLUTE POLICE DEPARTMENT** ("CPD"), and for cause would show the Honorable Court as follows:

# I.
# __INTRODUCTION__

1.     On or about March 16, 2022, in response to Ms. Spaulding refusing consent to City of Clute police officer Defendants to access and search her home— and verbally opposing the illegal conduct—former Clute Police Officer Matthew West came behind her, yanked her away from her apartment, threw her into a neighboring window by her neck, handcuffed her, and then, while again grabbing her by her neck, leg-swept her causing her to rupture her ACL (which required surgery to repair) and fall into a deep clinical depression.  With Spaulding out of the way, accompanying police officers (to include supervisor Sergeant Kyle Garcia) made unlawful entry and search of Plaintiff's residence without a warrant, consent, or exigent circumstances.  Plaintiff remained in handcuffs for several minutes but was seized for about an hour before she was finally released.  Whitney M. Spaulding brings this civil action for damages against the City of Clute and its police officers, as well as other unidentified individuals for violating Plaintiff's rights under the First and Fourth Amendments of the United States Constitution and pursuant to 42 U.S.C. § 1983.

2.     Plaintiff alleges that the City of Clute and its policymakers, City Manager CJ Snipes ("Snipes"), Chief of Police James Fitch ("Fitch"), the Clute City Council, and Mayor of Clute Calvin Shiflet ("Shiflet") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer,

counsel or otherwise control officers who are known, or who should have been known to engage in the use of excessive force and make unlawful entries into private residences, including those officers repeatedly accused of such acts. The Policymakers, specifically City Manager Snipes, along with Chief of Police Fitch, had a duty, but failed to implement and/or enforce policies, practices, and procedures for the CPD that respected Plaintiff's constitutional rights. These failures resulted in Plaintiff sustaining a ruptured ACL, bruised arms, and psychological injuries for which she is still receiving treatment today. These incidents clearly violated Plaintiff's rights afforded to her under the United States Constitution and Section 1983. Plaintiff was harmed and seeks recovery in this lawsuit.

## II.
## JURISDICTION AND VENUE

3.     This is a civil rights action in which the Plaintiff seeks relief for the violations of her rights secured by 42 U.S.C. § 1983 and the Fourth Amendment.

4.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

5.     Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

6.     The events that gave rise to this lawsuit took place at The Life of Forest View Apartments located in Clute, Brazoria County, Texas.

## III.
## PARTIES

7.      Plaintiff **WHITNEY M. SPAULDING** ("Plaintiff") is a law-abiding citizen of the United States and a resident of the City of Clute, County of Brazoria, State of Texas.

8.      Defendant **CITY OF CLUTE** ("Defendant City") is a political subdivision of the State of Texas, acting under the color of state law, and is a person for the purposes of a 42 U.S.C. § 1983 action.  Defendant is responsible for the policies, practices, and procedures of its Police Department and individual officers.

9.      Defendant **MATTHEW WEST** ("Defendant West") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.  Defendant West was permitted to resign in lieu of termination which allowed him to retain his peace officer license and avoid any discipline or criminal charges.

10.     Defendant **KYLE GARCIA** ("Defendant Garcia") was at all pertinent times a police Sergeant employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer and supervisor.

11.     Defendant **CHRISTOPHER ETHRIDGE** ("Defendant Ethridge") was at all pertinent times a police officer employed by the City of Clute and was at

all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

12.     Defendant **CRAIG CRAWLEY** ("Defendant Crawley") was at all pertinent times a police officer employed by the City of Clute and was at all pertinent times acting under color of state law in performance of his duties as a Clute police officer.

13.     Each and all the acts of Defendant Officers alleged herein were committed by said Officers while acting within the scope of their employment, each with their respective law enforcement office: the Clute Police Department, the Richwood Police Department, and/or the Brazoria County Sheriff's Office.

14.     Each and all of the acts of Defendant Officers were committed by these Officers despite their knowledge that they were engaging in unlawful and unconstitutional acts.    Yet despite this knowledge, they did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## IV.
## STATEMENT OF FACTS

15.     This action involves an incident that occurred starting late in the evening of March 15, 2022, and ending early the morning of March 16, 2022, at or around about 5:00 A.M., which is addressed herein chronologically.

16.   On the evening of March 15, 2022 (and into the early morning of March 16, 2022), Clute police officers responded to a call of service that several people were fighting at an apartment complex, so they called in support from Richwood police officers and Brazoria County Sheriff deputies.  Plaintiff resided at the apartment complex where the officers responded.

17.   During this call of service, Clute police officers arrested two individuals for minor offenses.  No one was arrested for fighting.

18.   Plaintiff was never suspected of committing any crime.  Defendant City's investigation report clearly notes that Plaintiff was not being aggressive or interfering.  At one point, she appeared to attempt to calm down an individual that police were attempting to detain.

19.   While on scene, Defendants West, Garcia, and Ethridge—all with the Clute Police Department—observed Plaintiff standing outside by her opened apartment door and noticed that occupants were inside her apartment.  None of the officers thought she had any involvement in the reported fight.

20.   The officers did not observe any fighting, but they observed an individual running away when they arrived, so they chased that individual down as he appeared to run toward Plaintiff's apartment.  They detained him in front of Plaintiff's apartment.

21.     While Defendants Garcia and Ethridge detained the individual in front of Plaintiff's apartment, bystanders inside were concerned for what was occurring outside, and they did not want any other individuals running into Plaintiff's apartment, so with consent of Plaintiff, they closed and locked the door.



22.     After detaining that one individual, Defendant Ethridge walked up to Plaintiff's door and attempted to open it.

23.     Plaintiff Spaulding and another bystander immediately and repeatedly informed Defendant Officers that they were not permitted to open Plaintiff's door or make entry into Plaintiff's apartment.

24.     Defendant Garcia, the supervisor on the scene, heard Plaintiff's objections and informed Plaintiff that he was going to kick the door in.  Defendants Etheridge and West, and others encouraged Defendant Garcia to kick it in even though Defendants were without any authority to kick in the door.

25.     Defendants did not have any information to suggest that any individual inside Plaintiff's apartment were involved in any alleged fighting.  They just did not like that people were inside that might be involved in any alleged fighting or may know who could have been involved, but they were not able to investigate because

the door was closed and locked.

26.     Defendant Garcia later acknowledged that he did not have any lawful basis to kick the door in as he did not have a felony warrant as required by Article 15.25 of the Texas Code of Criminal Procedure, and he did not view this as an exigent circumstances situation.  He further recognized that a reasonably trained officer would have backed off and developed another plan of action.

27.     While on the scene, Defendant Garcia used his flashlight to bang on the apartment window as Plaintiff continued criticizing the police and objecting to their unlawful conduct.

28.     Defendant West, in full view of Defendants Ethridge and Garcia, came up behind Plaintiff, and without announcing himself as a police officer, immediately grabbed the objecting Plaintiff by the neck and yanked her away from Defendants Garcia and Etheridge.



29.     Defendant West later informed Defendants Garcia, Etheridge, and Crawley, "I detained her because she was trying to block y'all."  He did not detain her for officer safety or for investigation but because she was objecting to Defendants attempting to open her door, and verbally criticizing them.

30.     Defendant West did not have any non-retaliatory purpose for detaining Plaintiff.  She was standing around when the officers originally arrived on the scene. She was speaking with them and attempting to calm down the individual being detained.  It was only after she refused to give consent to the officers, and then criticized them, that she was detained or arrested.  Defendant West did not inform her why he was detaining or arresting her.  He later admitted it was because she was shouting and hollering, and not consenting to Clute PD's entry into her home, so he had to "drag" her away.

31.     Neither Defendant Garcia nor Etheridge intervened or stopped Defendant West.

32.     After Defendant West yanked Plaintiff back, he slammed her into the window and handcuffed her.

33.     After Defendant West handcuffed Plaintiff, he again grabbed her by the neck, positioned his left leg at her right leg, and in his own words—attempted to leg sweep her.  Defendant West forced Plaintiff to the ground in a manner that resulted in her right ACL rupturing.

 

34.     Defendant West did not have any lawful basis to Defendants Garcia and Crawley observed this but did not intervene.  Defendant West later suggested that he put her on the ground because she swung at him.  Certainly, that was hard for her to do with her handcuffed.

35.     Defendant Crawley arrived on the scene at this point, saw West grabbing Plaintiff by the neck and then trying to slam her to the ground, so he ran up with his taser in hand announcing his intent to taser the handcuffed Plaintiff.



36.    With   Plaintiff   "dragged"   out   of   the   way,
Defendant Garcia, focused his attention back on Plaintiff's
residence and did what Defendant Etheridge did a minute
before, went to Plaintiff's door and attempted to open it.

37.    Recognizing that the door was locked, Defendant
Garcia repeatedly banged on it.  He had Defendants Etheridge
and Crawley stacked around him while West stood near by
hoovering over Plaintiff.

38.     A female inside Plaintiff's apartment opened the door, and Defendants Garcia and Etheridge immediately ordered her and another female sitting on a nearby couch to vacate.   (They did not end up leaving, and they were not placed in handcuffs).

39.     At no time did anyone give consent for Defendants to enter, yet Defendants Garcia, Etheridge, and Crawley did just that.

40.     The female sitting on the couch immediately demanded that the Defendant Officers leave or provide a warrant, stating that they did not have a right to be inside.  Defendant Ethridge pointed at that female and demanded that she "shut the hell up."  Defendants did not leave, obtain a warrant, or provide a warrant.  Yet, they remained inside and began searching the apartment.

41.     With Richwood police officers and Brazoria County deputies on scene and watching Plaintiff, Defendant West soon joined Defendants Garcia, Ethridge, and Crawley inside.

42.     Defendants Garcia, Etheridge, and Crawley searched Plaintiff's apartment without a warrant, exigent circumstances, or consent.  They looked in bathrooms, closets, and bedrooms.

43.     Defendants Garcia, Etheridge, Crawley, and West all knew that they unlawfully entered Plaintiff's residence and then searched it.  They were not concerned for the safety of them or other individuals inside.  They had ample time

to obtain a warrant if they had probable cause to enter or search the apartment, but they did not do that.

44.   They remained in possession of Plaintiff and her apartment for about an hour.

45.   At some point, Defendant West removed the handcuffs from Plaintiff, but she was still unlawfully seized.  While seized, she continued to object to the Defendants being inside of her apartment.  However, she was still subjected to Defendant City's control and not free to leave.  Despite other bystanders being inside of Plaintiff's apartment (with the ability to enter and leave as they pleased), she was forcefully prevented from entering and forced to remain within the presence of officers.  The image below shows her being removed from her doorway after she tells the Defendant Officers to leave her apartment.  They ignored her.



46.     Defendants found a male inside one of the bedrooms.  They briefly detained him until they determined he was not involved in the alleged fight.  There were no witnesses or injuries reported concerning the alleged fight.

47.     After Defendant Officers completed their warrantless search of Plaintiff's residence, an officer observed Plaintiff having difficulty walking, so EMS was called.

48.     Plaintiff pointed out that she thought Defendant West broke her leg, and that she would see him in court.  West retorted that he would see her there as he bragged about getting paid to go to court.

49.     When the ambulance arrived, Plaintiff saw one of the officers whispering to the EMT.  This concerned Plaintiff, as she did not trust the Defendant Officers.

50.     When the EMT approached Plaintiff, Plaintiff told her she could not walk and asked for crutches.  The EMT questioned her ability to walk.  Plaintiff no longer felt safe going with the EMT, so she asked them to leave.

51.     Several hours passed.  Plaintiff still could not walk comfortably, and her leg hurt so much she was unable to sleep.  Since she could not drive, Plaintiff called a friend to take her to the nearest hospital, UTMB Health's Angleton campus.

52.     Plaintiff was diagnosed with a ruptured ACL.  She had surgery to repair the rupture on or about September 20, 2022.

53.     On March 17, 2022, Plaintiff went to Defendant City's police department wearing an immobilizer on her knee to submit a complaint.

54.     Despite her complaint being investigated and allegations against Defendant West sustained, not a single officer was disciplined for their conduct.

55.     Defendant Garcia was questioned on his ability to control the scene, and he and Etheridge were questioned about whether they knew when they could kick in a door.  The interviewer raised concern about their knowledge about the law in this regard, but nothing came of it.

56.     West was accused of using excessive force when he slammed the handcuffed Plaintiff down.  In his recorded statements, he originally attempted to state that Plaintiff was going to strike him.  This was false.  Once West was shown body worn camera from other officers, he appeared to accept that he used excessive force on the handcuffed Plaintiff (and at least two other individuals).  He also stated that he went through this before and knew what was going to happen.  He ultimately resigned.

57.     While there were violations sustained against Defendant West for using excessive force, making inappropriate comments, and failing to have his body worn camera in violation of department policy, the Policymakers did not investigate anyone for their failure to intervene, or for making unlawful entry into Plaintiff's residence, or for unlawfully searching it.

58.     At the time of the incident, Plaintiff, a factory worker, was temporarily laid off.  She was recently offered her job back but had to decline because she was unable to meet the physical demands of her job.

59.     The psychological injuries of this incident were great.  With the initial assault by West, the failure of the other officers to act, the failure of the City to investigate and discipline, together with Plaintiff unable to work due to her injury, and the need for surgery (which may never result in a full recovery) caused Plaintiff to fall into a deep depression.

60.     Plaintiff attempted suicide by swallowing a handful of pills and was admitted for inpatient treatment.  She was ultimately diagnosed with major depressive order with the March 16, 2022, incident being the triggering event.

61.     On September 20, 2022, Plaintiff had surgery to repair the ACL rupture caused by Defendant West.  It is still too early to evaluate whether the surgery was successful, whether additional surgery is needed, and what the full treatment plan will entail.  She is in the middle of a treatment plan that will span for at least a few months.  This information will be fully developed in discovery.

62.     Plaintiff has a long road to recovery ahead of her.  She filed this lawsuit to seek answers, justice, and monetary relief.

# V.
# CAUSES OF ACTION

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (First Amendment – Retaliation)

63.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

64.     Plaintiff asserts this claim against Defendant West.

65.     The law is clearly established that individuals have a First Amendment right to criticize the police.  Plaintiff's use of language and criticizing Defendant West was not sufficient to warrant an arrest, and her language did not constitute fighting words. *See City of Hous. v. Hill*, 482 U.S. 451, 461-63 (1987).  Telling Defendant Officers that they did not have a right to enter into her apartment, in response to them attempting to unlawfully enter does not rise to the level of fighting words.

66.     It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech.  *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, (1974) (Powell, J., concurring)) ("Trained officers must exercise restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of

protected speech activities."); *see Hill.*, 482 U.S. at 462 ("[The] First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").  Defendant West violated this right.

67.     At all times relevant, Defendants West was acting under color of State law.

68.     Defendant West detained or arrested Plaintiff without reasonable suspicion, probable cause, or any lawful basis, and used force against her by yanking her arm, grabbing her neck, and slamming her into her neighbor's wall while applying his body weight against her—and after cuffing her, leg-swept her—because of her verbal criticism of him and other officers, and because she vocalized her objections to them trying to unlawfully enter her apartment.  Plaintiff used speech to inform Officer West that he was engaged in illegal activity.  Plaintiff's verbal criticism was met with force and arrest.  *Hill*, 482 U.S. at 462-63 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

69.     Defendant West would not have detained, arrested, or assaulted Plaintiff had she not vocalized her objections to Clute PD attempting to enter into her apartment.

70.     Defendant West's decision to seize and arrest Plaintiff was made as retaliation of him feeling disrespected by Plaintiff's criticisms of him, and her refusal

and objections to officers making entry into her apartment.

71.     The unlawful seizure and use of force by Defendant West—which injured Plaintiff by rupturing her ACL and then caused psychological injuries—was motivated by Plaintiff's speech and it would chill a person of ordinary firmness from engaging in similar protected speech.  *See, e.g.*, *Brooks v. City of West Point*, 639 F. App'x 986, 987 (5th Cir. 2016) ("[A]rrest for cursing a police officer was an injury that would chill the speech of a person of ordinary firmness.").

72.     It would have been clear to any reasonable officer that West's conduct was unlawful, because "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable," and there was not any legitimate ground to seize Plaintiff.  *Kennan*, 290 F.3d at 261-62.

73.     Officer West did not have any non-retaliatory reason to yank Plaintiff, grab her by the neck, throw Plaintiff into her neighbor's window, handcuff her, leg sweep her, or again hold her by the neck while handcuffed, but for Plaintiff exercising her right to free speech.  Plaintiff was not a safety threat or committing any crime.  She only became a problem once she vocalized dissent to Clute PD's conduct

74.     Officer West is heard on video explaining to Plaintiff that he detained her because she was hollering and yelling and he had to "get in there and drag her away" when she objected to Defendants attempting to open her apartment door.

75.     Defendant West, intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence, retaliated against Plaintiff for engaging in protected conduct.

76.     As a direct and proximate result of Defendant West's unlawful actions, Plaintiff was harmed.

### COUNT II
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Illegal Entry)

77.     Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

78.     Plaintiff asserts this claim against Defendants West, Garcia, Ethridge, and Crawley.

79.     It is clearly established that warrantless entry into a home is unconstitutional. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) ("[T]he Fourth Amendment's protection of curtilage has long been black letter law.").  The Fifth Circuit has held that, "[u]nder the Fourth Amendment, a warrantless intrusion into a person's home is 'presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the intrusion." *Rockwell v. Brown*, 664 F.3d 985, 994-96 (5th Cir. 2011) (analyzing a warrantless entry claim separately from a warrantless arrest claim).  Defendants violated this right.

80.     Defendants did not have a warrant, exigent circumstances, or consent

to enter Plaintiff's apartment. Defendants would have known that a warrantless entry into a private dwelling without exigent circumstances, consent, or a warrant is unlawful, so the entry into Plaintiff's apartment was unlawful.

81.     At all times relevant, Defendants West, Garcia, Ethridge, and Crawley were acting under color of State law.

82.     Defendant Officers responded to a call of service at an apartment complex expecting a fight involving several people. When they arrived, they only found one person running away and Plaintiff's apartment door open with occupants inside. They are being told that there was no fight, only people yelling at each other. They want to speak with the individuals inside the apartment, but the door was now shut and locked, and Plaintiff informed them they could not go into her apartment. They did not like this and wanted to do it anyway.

83.     Defendants did not report that there was an ongoing crime occurring, or that people were injured. Defendants did not have exigent circumstances to make entry into Plaintiff's apartment. If Defendants had probable cause to make entry into the apartment, they had time to go get a warrant, which they did not do.

84.     Instead, West "dragged" Plaintiff away after she denied Defendants consent, Defendants Garcia and Etheridge threatened to kick the door down, and then attempted to open the door by its handle before knocking vigorously.

85.     Once the door opened, Defendants Garcia, Ethridge, and Crawley

immediately went in and were met with verbal resistance from one of the females inside.

86.     The female inside told them the same thing that Plaintiff did—they did not have authority to be inside.  Defendant Ethridge, in front of Garcia and Crawley, told that female to shut up and headed deeper into the private dwelling.

87.     Defendant West soon joined these other defendants inside Plaintiff's private dwelling.

88.     Defendants West, Garcia, Ethridge, and Crawley offended the Constitution by making entry into Plaintiff's home without any lawful basis.

89.     Defendants West, Garcia, Ethridge, and Crawley acted intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

90.     As a direct and proximate result of these Defendants' unlawful actions, Plaintiff was harmed.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment – Unlawful Seizure)

91.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

92.     Plaintiff asserts this claim against Defendant West.

93.     A seizure occurs when an officer, by means of physical force or show of authority, intentionally restrains a person's freedom of movement so that a

reasonable, innocent person would have believed that she was not free to leave, terminate the encounter, or decline the officer's request.

94.     Plaintiff has a clearly established right to be free from unlawful seizure. *Freeman v. Gore*, 483 F.3d 404, 411-13 (5th Cir. 2007). The Fifth Circuit has previously acknowledged that removing a plaintiff from her doorway, and then placing her in handcuffs for 30 to 45 minutes constitutes an unlawful arrest in violation of the Fourth Amendment. *Id*. Defendants violated this right.

95.     Defendant West, at all relevant times, acted under the color of law.

96.     Defendant West seized Plaintiff by forcefully and physically removing her away from her apartment, placed handcuffs on her, slammed her to the ground, and then had her secured by him and other officers for 30-45 minutes (with some of that time being unhandcuffed, but still not free to leave).

97.     If Defendant West's seizure rose to an arrest, it was without probable cause. "[A] seizure without probable cause to believe the person is guilty of a crime violates the Fourth Amendment." *United States v. Massi*, 761 F.3d 512, 523 (5th Cir. 2014).

98.     If Defendant West's seizure constituted a *Terry*-style detention, it was still in violation of the Fourth Amendment as the detention is supposed to be based on "reasonable suspicion that criminal activity is afoot." *Caroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). But Defendant West detained Plaintiff because she

was present by her apartment verbally criticizing police, and telling them that they could not go into her apartment.

99.    Understandably, the officers were likely investigating and trying to identify individuals in the reported fight.  However, no provision of the Texas Penal Code makes it criminal for Plaintiff to stand by her apartment and inform police that she does not give them permission to enter her apartment, and then criticize them for attempting to do so anyway.

100.   Even if West did not arret or detain Plaintiff, he still violated the Fourth Amendment.    An "investigatory, suspicionless seizure trigger[s] a Fourth Amendment reasonableness analysis." *Lincoln v. Scott*, 887 F.3d 190, 196 (5th Cir. 2018).

101.   Plaintiff's seizure did not carry any public concern, did not advance any public interest, and was far more than a minimally intrusive stop authorized for suspicionless seizures. *Illinois v. Lidster*, 540 U.S. 419, 427-28 (2004).   West detained Plaintiff for about an hour with some of this time being in handcuffs.

102.   Regardless of the type of seizure, the seizure was apparent, and any reasonably trained officer would recognize that it violated Plaintiff's Fourth Amendment right.  Plaintiff was not free to leave, and her movement was restrained "by means of . . . a show of authority." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).  This included West's use of physical force and assertion of authority.

*California v. Hodari D*, 499 U.S. 621, 626 (1991).  Plaintiff's freedom was restricted for 45 minutes to an hour, she was removed from her apartment area to the neighboring apartment aware where she was required to remain under the supervision of West and other officers.

103.   Plaintiff was seized simply because she verbally criticized police and refused to provide consent to access her home without a warrant.

104.   Plaintiff was removed from her doorway, handcuffed, and forced to remain in the location where Defendant West put her while Defendants Garcia, Ethridge, and Crawley made unlawful entry into her home.

105.   Once Defendants Garcia, Ethridge, and Crawley completed their unlawful search of Plaintiff's residence, they released Plaintiff from custody.

106.   Plaintiff was not investigated or charged with any crime.  Defendants did not detain her for any investigative purpose or safety reasons.  She was removed from the area so Clute Police Officers could have unfettered access to her home even though they lacked any probable cause or exigent circumstances, a warrant, or consent.

107.  Defendant West's conduct was done intentionally, knowingly, maliciously, reckless, unreasonably, and with gross negligence.

108.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for

pain, mental anguish, humiliation, embarrassment, and loss of reputation.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourth Amendment – Excessive Force)**

109.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

110.   Plaintiff asserts this claim against Defendant West.

111.   "The Fourth Amendment prohibits police from using more force than is reasonably necessary to effectuate an arrest." *Buehler v. Dear*, 27 F.4th 969, 980 (5th Cir. 2022).

112.   If West did not intend to arrest Plaintiff, then he was without any basis to use force on her.  There was no crime, she did not pose any immediate threat to the safety of officers or others, and she was not actively resisting or attempting to evade arrest.  *See Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020).

113.   It has long been established that "[o]fficers engage in excessive force when they physically strike a suspect who is not resisting." *Id*. at 342.

114.   The use of force in question occurred after Plaintiff was in handcuffs leaning up against the wall.  She verbally criticized West and other Clute PD officers for moving her away from her apartment and putting her in handcuffs while officers continued to attempt to make unlawful entry into her apartment.  Plaintiff's criticism irritated West, and caused him to grab the handcuffed Plaintiff by the throat and leg-

sweep her while violently slamming her to the ground.  West slamming Plaintiff to the ground in this manner caused Plaintiff to rupture her ACL in her right knee which required (and still requires ongoing) medical treatment.  West's excessive force also directly contributed to Plaintiff's psychological injuries.

115.   It is objectively unreasonable "for an officer to use injurious force against a non-resisting, non-dangerous individual who is not suspected of a serious crime"—especially when "force is applied after the suspect has been restrained and subdued."  *Aguirre v. City of San Antonio*, 995 F.3d 395, 412 (5th Cir. 2021).  *See also Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (recognizing that . . . once a suspect has been handcuffed and subdued . . . an officer's subsequent use of force is excessive"); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, and officer's subsequent use of force is excessive." (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)).  Defendant West violated this right.

116.   Defendants West while acting within the scope of his employment with the City of Clute Police Department, and under the color of law, attacked and assaulted Plaintiff for no lawful reason.

117.   The force used by Defendant West was objectively unnecessary, excessive, and unreasonable under the circumstances.  Rather, Defendant West

embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause—and in fact caused—Plaintiff to suffer.

118.   Defendant West knew that his force was excessive, as while he hovered over Plaintiff during her seizure, he attempted to apologize for his conduct.  His apology did not undo the harm caused to Plaintiff.

119.   As a direct and proximate result of Defendant West's unlawful conduct, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## (Fourth Amendment – Unlawful Search of Home)

120.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

121.   Plaintiff asserts this claim against Defendants Garcia, Ethridge, and Crawley.

122.   It is well-established that warrantless searches of homes are presumed unreasonable, and police bear a heavy burden in demonstrating an urgent need to conduct a warrantless search.  *Brigham City v. Stuart*, 547 U.S. 403 (2006). Defendants violated Plaintiff's Fourth Amendment right to be free from an unlawful search of her home.

123.   At all times relevant herein, Defendants Garcia, Ethridge, and Crawley

were acting under the color of State law.

124.   After these defendants went into her home, they searched her bedroom, her closets, and bathroom.   These defendants conducted these searches without consent, a warrant, or exigent circumstances.

125.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Supervisor Liability)

126.      Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

127.      Plaintiff asserts this claim against Defendant Garcia.

128.      At all times relevant herein, Defendant was the supervisor on the scene, and in charge of Defendants West, Ethridge, and Crawley, and at all times was acting under the color of State law.

129.      Defendant Garcia acted, or failed to act, with deliberate indifference, when he allowed Defendant West to seize Plaintiff for objecting to Garcia's attempt to unlawfully enter her apartment.   Defendant Garcia knew that Defendant West's conduct was wrong, but he allowed it to continue, and even represented to everyone that he would have the door kicked in.

130.     Clute PD came to the same conclusion—recognizing that Defendant Garcia failed to control the scene or to de-escalate the situation.  He was also criticized for not knowing the statutory limits for when he could kick a door in.  He was not, however, found to have failed to intervene, or for entering Plaintiff's apartment unlawfully.

131.     Defendant Garcia also observed Defendant West use excessive force on Plaintiff after she was handcuffed.  He failed to act in every way and allowed Defendant West to continue his assault and seizure on Plaintiff.  He did not instruct Defendant West to release her or to check on her.  Instead, he acknowledged that she was out of the way, and he continued his unlawful entry and search into Plaintiff's residence.

132.     Defendant Garcia then permitted his subordinate officers to unlawfully enter an search Plaintiff's apartment.

133.     Inside the residence, there was a locked bedroom door.  Defendant Garcia gave the order to kick it in—knowing that he was without statutory authority (or any lawful authority), consent, exigent circumstances, or a warrant.

134.     At all times relevant, Defendant Garcia intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed Defendant West, his subordinate officer, to use unlawfully seize, and the use excessive force, against Plaintiff, to permit him to illegally enter her home and

otherwise violate Plaintiff's constitutional and statutory rights.

135.     As a direct and proximate result of Defendant Garcia's unlawful actions, Plaintiff suffered damages for her physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

**COUNT VII**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(*Monell* Liability)**

136.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

**A. City of Clute's policies, practices, and custom on the use of force, unlawful seizure, and unlawful entry were a moving force behind violating Plaintiff's constitutional rights to be free from excessive force.**

137.   The City of Clute is liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the City of Clute police department, of which the City Council, the City Manager, the Mayor, and the Chief of Police all had actual or constructive knowledge that was a moving force behind the constitutional violates alleged herein.

138.   Defendants Sergeant Garcia, Officers West, Ethridge, and Crawley were acting under the color of law and acting pursuant to customs, practices, and policies of the City of Clue and the Clute Police Department in regard to the use of force as authorized or ratified by the Policymakers—Assistant Chief of Police Diane

Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin

Shiflet—when Defendants West, Garcia, Ethridge, and Crawley deprived Plaintiff

of rights and privileges secured to her by the Fourth Amendment to the United States

Constitution. This was a direct result of the City of Clute failing to provide proper

training in the use of force, which is a violation of 42 U.S.C. § 1983.

139.   The unwritten policies, practices, or custom was evident as every

officer on the scene (including supervisor Kyle Garcia) saw what Officer West did

to Plaintiff, and rather than do anything to intervene or correct it, they continued

violating Plaintiff's rights by entering her home without any lawful basis and

searched it.

140.   Detaining and arresting individuals, and conducting searches are part

of a police officer's duties.  Policymakers know this.  They are required to implement

policies that require appropriate and measured responses while also protecting the

rights of citizens.  The policies, practices, and custom of the City of Clute's police

department directly contradict these considerations.

141.   The Policymakers knew of these policies, practices, and custom but

acted with deliberate indifference.  These violations should have been apparent to

the Policymakers.

142.   Defendants West, Garcia, Ethridge, and Crawley acted on the City's

unconstitutional policies, practices, and custom, which was authorized or ratified by

the Policymakers, specifically the City Manager and Chief of Police, when Defendant Officers deprived Plaintiff of rights and privileges secured to her by the First and Fourth Amendments of the Constitution—when West unlawfully arrested Plaintiff and used excessive force to allow his fellow officers to gain unfettered access to Plaintiff's home without any lawful basis.  At no time did Plaintiff pose any actual threat to officers or others; she was not committing any crime; and she was not resisting arrest or attempting to flee.  She was simply expressing her First Amendment right in objecting to Clute PD's attempt to unlawfully enter her home, and she was arrested and then physically assaulted for it.

143.   The City of Clute's use of force, unlawful seizure, and unlawful entry policies, practices, and custom were the moving force behind Plaintiff's constitutional violations.

## B. The City of Clute failed to train its officers on use of force, lawful seizures, lawful searches of homes, and the duty to intervene.

144.   The City and its Policymakers failed to adequate train, supervise or discipline its employees regarding the unnecessary and excessive use of force, the wrongful arrest of Plaintiff, and the unlawful entry of someone's home.

145.   "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

146.   The failure to train, supervise or discipline its employees in this manner

reflects a deliberate indifference on the parts of the City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

147.   Defendants' violations against Plaintiff were obvious and a highly predictable consequence of insufficient training on the use of force, the lawfulness of seizures and searches, and the duty to intervene.

148.   This single incident is sufficient to show deliberate indifference on part of the City and its Policymakers because these facts that led to the violations are such that it should have been apparent to the City these constitutional violations was the highly predictable consequence of a particular policy or failure to train.  *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003) citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000).

149.   Defendants were accused of using excessive force against multiple individuals that night—not just plaintiff.  When Clute PD investigated the incidents, it discovered that officers were not aware of when it was ok to kick in a door and enter a residence.  Officers were not aware of whether to leg-sweep an individual, or to press someone's face into the ground while they were in handcuffs (which happened to an individual on the scene, but not before this court).

150.   The City and its Policymakers "know to a moral certainty that their

police officers" are required to conduct certain functions, such as make arrests and conduct searches. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

151.   The most basic function of conducting searches and seizures, as well as using force, is to know the constitutional limits of each.  Without this knowledge, no officer could be expected to know how to make lawful arrests, lawful searches, or how to deploy reasonable force.

152.   Given that not a single officer questioned Defendant West's excessive use of force or unlawful arrest, and that every officer (including supervisor Sergeant Garcia) made entry into—and then searched a—home that a reasonably-trained officer would have recognized was without consent, a warrant, or exigent circumstances.

153.   A reasonably trained officer would have recognized Plaintiff's right to object to Defendants' warrantless entry into her home, and that she had a right to verbally criticize them.  A reasonably trained officer would have obtained a warrant to enter had they thought they had probable cause to enter.  They would not have detained or arrested Plaintiff for exercising her First Amendment right.  They would not have detained or arrested Plaintiff to remove her from the area while they gained unfettered access to her residence.

154.   There is a casual connection between the failure to train and the violation of Plaintiff's rights.  Had Defendant officers been property trained as to

Plaintiff's rights they would have never assaulted her or arrested her.  They would have intervened and stopped Defendant West's conduct.  They would not have made entry into Plaintiff's home and then searched it (at least, not without a warrant).  Every officer present at Plaintiff's residence on March 15 and 16, 2022, acted contrary to how a reasonably trained officer would have acted in similar circumstances.

155.   There is a constitutional duty to not interfere with Plaintiff's right to be free from excessive force and unreasonable searches and seizures that are likely to arise "in recurrent situations that a particular employee is certain to face." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 626 (5th Cir. 2018).

156.   These daily functions of officers, to conduct searches and seizures with a lawful purpose, requires training to ensure that an individual's constitutional freedoms are not being violated.  Had any one of the many Clute police officers on scene been properly informed and trained on Plaintiff's clearly established rights, then Plaintiff would not have been injured—or at the very least—would have been spared from further injury.  Defendants, if well-trained, would not have entered Plaintiff's home and searched it.

157.   The City of Clute, Clute Police Department, Assistant Chief of Police Diane Turner, Chief of Police James Fitch, City Manager C.J. Snipes and Mayor Calvin Shiflet developed and maintained a policy of deficient training of its police

force in lawful searches, the use of force, and in the apprehension and wrongful detention of individuals.  The City's training is designed and implemented by Mayor Calvin Shiflet, City Manager C.J. Snipes and Chief of Police James Fitch.

158.   Defendant City and its Policymakers knew it was inevitable that their officers would be put in situations where they were required to interact with citizens, make lawful determinations in conducting searches and seizures, and be required to apply a level of objectively reasonable force.  Defendant City was aware that not training on these situations would lead to the exact constitutional violations detailed throughout this complaint.

159.   Defendant City's failure to provide training is the kind of deliberate indifference that creates municipal liability for Section 1983 failure-to-train claims.

160.   Defendant City's failure to properly train its police officers regarding the use of force was the proximate cause of the violations of Plaintiff's constitutional rights.

**C. The City of Clute failed to adequately supervise or discipline its officers for excessive force, wrongful seizures, unlawful searches, and failing to intervene, and in failing to do so, ratified and encouraged the conduct of its officers.**

161.   Defendant On Plaintiff's governmental liability claim against the City of Clute for failing to supervise and discipline its officers for prior and current violations and the resulting lack of supervision:

(a)   The City and Police Chief failed to adequately supervise or discipline

its employees in handling usual and recurring situations with which they deal;

(b)     Chief Fitch and City Manager Snipes were deliberately indifferent to the need to supervise or discipline its officers or employees adequately;

(c)     The failure to adequately supervise and discipline its officers proximately caused the deprivation of Plaintiff's constitutional rights; and

(d)     The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for removing Plaintiff from her doorway, arresting her, applying excessive force, entering her home and searching it—all without any lawful basis.

(e)     The City and its Policymakers failed to adequately supervise or discipline Defendant Officers for failing to intervene to stop Defendant West's unlawful conduct, and to provide immediate medical treatment to the arrested Plaintiff.

162.   Despite having knowledge of Defendant Officers' violations of the Clute Police Department's use of force policies, and other best police practices, Defendant City and its Policymakers refused to adequately discipline Defendant Officers.  The City's Policymakers were aware of the out-of-control behavior of Defendant West but failed to take any actions.

163.   On the night in question, Defendant West was accused of using excessive force against at least three different individuals.  He also acknowledged in in the post-incident investigation that he knew the drill, that he had been through this before.

164.   Defendant City's failure to adequately supervise or discipline its officers was therefore the moving force behind Plaintiff's damages.

165.   Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

**D. The City of Clute failed to adequately investigate, and in failing to do so, ratified and encouraged the conduct of its officers, including Defendant West.**

166.   In addition, Defendant City, as applicable, failed and refused to adequately investigate this officer-involved assault.   Defendant City allowed Defendant West to resign, but no other officer was investigated, counseled, or disciplined for their misconduct.   Defendant City used Defendant West as a scapegoat to protect its other officers by initiating an outcome determinative investigation that forced Defendant West to resign while clearing other officers of any wrongdoing.   The City and its Policymakers knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Plaintiff's home would be entered upon and searched illegally, and she would be assaulted and arrested if she vocalized her opposition to the illegal police activity—in all reasonable probability would occur.

167.   Defendant City's failure to investigate was a deliberate indifference of the conduct of the involved officers, and this failure was the proximate cause of the violations of Plaintiff's constitutional rights.

168.   Defendant City is directly responsible for the individual Defendants'

conduct described herein.

### E. The City of Clute falsely arrested Plaintiff although she did not commit a penal offense.

169.  Plaintiff would show that the actions of Defendants West was objectively unreasonable and done in bad faith in that it resulted in the wrongful arrest of Plaintiff without probable cause, for no lawful reason.  Plaintiff did not commit a crime, was not accused of committing a crime, and was not even a suspect in committing a crime.  Plaintiff simply refused to give consent to enter her home and vocalized her opposition to Defendants Garcia, West, and Etheridge as Defendants Garcia and Etheridge attempted to unlawfully enter her home.  Then, Officer West, for no objective reason, assaulted Plaintiff, arrested her, and then leg-swept her while grabbing onto her neck, which ruptured her knee and eventually drove her into a suicidal depression—all without any lawful purpose.

170.   The only purpose for Defendant West's actions was to allow the City's officers to gain entry into Plaintiff's home unopposed—even though they were without probable cause, a warrant, exigent circumstances, or consent.

171.   Plaintiff suffered damages because of her illegal search and seizure, and this arrest and search were done under the color of law.

### VI.
### DAMAGES

172.  **Actual damages**.  Defendants' acts or omissions were a proximate

cause and the moving force behind the following actual damages suffered by the Plaintiff, and Defendants should be held jointly and severally liable for the physical injuries, mental anguish, emotional distress, loss of potential income, disfigurement, medical treatment, and pain and suffering.

173. **Punitive/Exemplary Damages against individual defendants in their individual capacities**.  Punitive/exemplary damages are recoverable under Section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of each individual defendant, and more specifically, Defendant West, was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Plaintiff.  As such Plaintiff requests punitive and exemplary damages from Defendants West, Garcia, Ethridge, and Crawley.

174. Prejudgment and post judgment interest.

175. Costs of court.

176. Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

177. Plaintiff seeks unliquidated damages in an amount that is within the

jurisdictional limits of the court.

## VII.
## JURY DEMAND

178.  Plaintiff hereby demands a trial by jury on all issues so triable, pursuant

to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and answer

herein; that upon final trial hereof Plaintiff has and recover judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal

rate; interest on the judgment at the legal rate; costs of court; attorney fees; and any

other relief, both general and special, in law and equity, to which Plaintiff is justly

entitled.

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Attorney-in-Charge
Texas State Bar No. 24086983
SDTX Bar No. 3246103
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby affirm that on this 12th day of October 2022, the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*